**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-01441-PAB-CBS

JACK KESLING and
MICHELLE KESLING,

Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

Defendant.
_____

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

Defendant American Family Mutual Insurance Company hereby submits its Reply Brief in Support of its Motion for Partial Summary Judgment.

Plaintiffs' Response Brief attempts to portray as complex a sequence of events which is, in actuality, quite simple. Based on the facts set forth in both parties' briefing and attached exhibits, as well as the additional evidence presented herewith, it remains undisputed that the Keslings were aware of the defective construction of their deck, and ensuing water damage to the deck and adjacent elements of their home no later than August 6, 2008, yet deliberately chose not to proceed with their insurance claim under their American Family's Policy, much less file suit, until more than one year had elapsed thereafter.

The following will address each of the points raised in Plaintiffs' Response Brief.

**1. Plaintiffs were aware of both the defective construction of their deck, as well as resulting loss, no later than August 6, 2008.**

Plaintiffs acknowledge they asserted a claim under their American Family Policy on August 20, 2008. As referenced in the First Notice of Loss (Exhibit B to Defendant's Motion), the "cause" and "damage" of the loss were reported to American Family as "water damage to deck and siding." This fact alone is dispositive of Defendant's Motion. The Keslings knew they had experienced water damage to their deck and adjacent siding as of August 6, 2008, as demonstrated by their reporting the loss to American Family in the first instance. They thereafter abandoned their claim by refusing to respond to American Family's phone calls and letters, or otherwise communicate with American Family, until more than one year had elapsed thereafter. Nowhere in their Response Brief do Plaintiffs explain why they waited more than a year to resume their claim, or why this delay should not serve to bar their claim under the Policy's clear and unambiguous one year suit limitation provision.

In challenging Defendant's Motion for Partial Summary Judgment, Plaintiffs now seek to downplay the significance of the reported loss, by describing the identified loss as nothing more than a "wrinkle" to the surface of the deck. However, the Keslings in fact knew the damage to their deck to be far worse than just a "wrinkle" to the surface coating, as reflected in Michelle and Jack Keslings' e-mail exchange with the prior homeowner, Steve Dulaney, attached hereto as Exhibit G (Exhibits A-F were attached to Defendant's original Motion). Michelle Kesling e-mailed Steve and Janet Dulaney on June 27, 2008 to report the deck surface was "bubbling and lifting off the stairs." In responding to Ms. Kesling's e-mail, Mr. Dulaney acknowledged he had hired Angelo Pereyra in July 2007 to fix a leak in the deck coating. When Mr. Kesling then called Mr. Pereyra to inquire as to the specifics of this repair, he was told by Mr. Pereyra that at the time of Mr. Pereyra's July 1, 2007 visit, he observed the deck's "pebble" surface would not

prevent moisture from seeping into the deck, and that water damage to the underlying deck structure had already occurred. According to Mr. Pereyra, he was told by Mr. Dulaney not to repair the underlying structure damage, since they were selling the home shortly. Mr. Kesling then followed up with his August 20, 2008 e-mail to Mr. Dulaney (sent the same day he reported the claim to American Family), in which he described the Keslings were experiencing "massive cracking, lifting and leaking issues on the west deck," and that the "deck has continued to peel and leak and we are now experiencing water running through the exterior foundation walls into the home." Mr. Kesling requested Mr. Dulaneys' cooperation in reaching "an immediate resolution to this pressing problem."

Plaintiffs acknowledge that Plaintiffs' date of loss can be addressed as a matter of law when the material facts are undisputed, and reasonable persons could not disagree about their import. Admittedly, the water damage to the deck's supporting structure and adjacent home finishes was an ongoing process, which had been occurring over a number of years commencing when the home was first built in 2003. While the damage had occurred over a period of time, what is important for the purposes of this Motion is the Keslings had become award of the full import of the problem, including the "massive cracking, lifting and leaking issues on the west deck," by the time they first reported the loss to American Family on August 20, 2008. Certainly, the Keslings themselves did not think that action on the claim was premature, given their insistence to the Dulaneys for an "immediate resolution" to the problem. From anyone's perspective, the Keslings had become acutely aware of the defective construction of their deck, and the ensuing water damage to the deck structure and their home, by August 6, 2008.

As set forth in American Family's Motion, its property claims adjuster Bob Tamminga III called the Keslings and left phone messages with them on August 20 and again on August 22,

2008, seeking to set up an appointment to discuss their claim with them. He thereafter wrote the Keslings on August 22, 2008 informing the Keslings that American Family would close its file if he did not hear from them. In his Affidavit submitted with his Response Brief, Mr. Kesling admits he ignored Mr. Tamminga's efforts to schedule a meeting and solicit further information from the Keslings concerning their claim. He admits he let matters lapse with American Family, despite the urgency expressed in his e-mail to Mr. Dulaney during the very same week that the Keslings were experiencing "massive" cracking, lifting and leaking of their deck, along with water running down the exterior foundation walls into the home.

Mr. Kesling states in his Affidavit that by choosing not to respond to Mr. Tamminga's inquiries, he did not intend to abandon his property damage claim. It is difficult to view Mr. Kesling's non-responsiveness as anything other than an abandonment of his claim, since American Family was stymied in conducting any further investigation absent Mr. Kesling's cooperation. Ultimately, though, Mr. Kesling's reasons for disregarding Mr. Tamminga's phone calls and letters is of no moment; all that really matters for purposes of American Family's Motion is that Mr. Kesling delayed for more than a year to follow up with American Family on his previously identified claim, which delay bars coverage under the Policy's one year suit limitation. Mr. Kesling was obligated under the Policy to timely pursue the claim, and his failure to do so – regardless of his reasons – bar any coverage for his claim that might otherwise have existed.

While the Keslings were aware of the fact and scope of damage to their deck and adjacent home finishes as of August 2008, they received further engineering explanation concerning the extent of the loss through BornEngineering's October 31, 2008 report. Plaintiffs did not file this lawsuit until June 18, 2010, more than 19 months after receipt of the October 31, 2008

BornEngineering report, and almost two years after they had become award of the defective construction to their deck and corresponding water damage to adjacent elements of their home. Under anyone's view of the occurrence date, Plaintiffs have breached the one year suit limitation contained in their Policy.

**2. Plaintiffs expert's subsequent report does not change the date of loss.**

Plaintiffs describe in their Response that while their initial August 20, 2008 notice of claim was limited to the defective construction of their deck and resultant water damage, on June 18, 2009 they received a second report from their retained engineer, Neil Mekelburg of BornEngineering, which detailed additional property damage unrelated to and independent of the initial deck problems, including property damage to the roof, stucco, crawl space and windows. While this is true as far as it goes, it does not alter the analysis, for several reasons.

First, by Plaintiffs' own admission, the subsequently reported claims were unrelated to the initial deck problems, and thus must be considered independently with regard to determining whether Plaintiffs waited too long to file suit on the deck claim. The June 18, 2009 report identified a new claim, with a different occurrence of loss date. A subsequently submitted unrelated property damage claim does not stop the clock from ticking on the deadline for suit on the previous deck claim. Having already reported an insurance claim with regard to the deck defects and ensuing loss, Plaintiffs could not indefinitely delay pursuit of that claim simply because they were looking to investigate other, unrelated potential claims.

The second reason the June 18, 2009 BornEngineering report is immaterial is because the more recently identified problems pertaining to roof, stucco, crawl space and windows do not assert a claim within coverage. Plaintiffs' retained engineer, Neil Mekelburg was deposed on June 27, 2011, and Defendant will supplement this Reply Brief with excerpts from Mr.

Mekelburg's deposition testimony once the transcript is received. Mr. Mekelburg acknowledged in deposition that the unrelated defects to roof, stucco, crawl space and windows had not caused resultant damage to the home. The subject Policy excludes from coverage the cost to repair defective workmanship absent any resulting loss, and Mr. Mekelburg does not identify resulting loss from those construction defects identified in his June 18, 2009 report.

The Keslings had an obligation under the policy to timely pursue their insurance claim relating to the defectively-constructed deck and ensuing water loss, regardless of the status of any unrelated (and uncovered) subsequent claims. The Keslings' failure to timely pursue their claim pertaining to deck issues bars such claim from coverage.

**3. The Policy's one year suit provision is enforceable under Colorado law.**

Plaintiffs concede the two legal decisions cited by American Family do indeed hold that an insurance policy's one year (or two year) suit limitation is enforceable, and is not abrogated by any different time limitation as may be set forth in any applicable statute of limitations. *See Grant Family Farm, Inc. v. Colorado Farm Bureau Mut. Ins. Co.*, 155 P.3d 537 (Colo. 2007); *Emenyonu v. State Fire and Cas. Co.*, 885 P.2d 320, 323 (Colo. App. 1994). Plaintiffs' effort to distinguish the *Grant Farm* and *Emenyonu* decisions on their facts is unpersuasive. The fact that the water damage to the deck had been occurring over a period of years is immaterial, since the Keslings were aware of the accumulated damage by August 20, 2008 when they first reported the claim to American Family. The proviso noted in *Emenyonu* – that an insurer's actions in handling a claim may equitably toll accrual of the limitations period – is also beside the point, since it was the Keslings, and not American Family, who delayed the handling of the claim for more than a year. While the Keslings first reported the claim on August 20, 2008, they thereafter abandoned the claim through a failure to respond to American Family's request for information or a meeting,

6

and then did not attempt to resuscitate the claim until Mr. Berg's letter of August 28, 2009, tendered to American Family more than a year thereafter.

Plaintiffs' final gambit is to request the Court to rewrite the policy, to change the existing policy provision requiring suit to be brought "within one year after the loss or damage occurs" so that it is interpreted to mean suit must be brought "within one year after the claim has been denied." Plaintiffs offer no legal authority to support such a remarkable proposition. Colorado appellate courts have already determined the existing suit limitation term complies with Colorado public policy, and so must be given effect as written. *See Republic Ins. Co. v. Jernigan*, 753 P.2d 229 (Colo. 1988) (the trial court must enforce an unambiguous insurance policy term as written).

The fact that the ensuing water damage to the deck structure occurred progressively over time does have important implications to this case, but they are not the implications proposed by Plaintiffs. Mr. Mekelburg admitted in deposition that because the defectively-built deck was subjected to water intrusion over a number of years preceding the September 19, 2007 inception date of the policy, he cannot say whether any ensuing damage occurred during the time the Policy was in effect. But Plaintiffs' inability to prove an occurrence of damage within the policy period presents a separate legal issue for another day. What is important here is that the Keslings were aware of both the defect as well as the resulting damage as of a specific date – August 6, 2008 – and that after bringing their claim to American Family's attention, they then chose to leave the claim dormant for more than a year thereafter.

**4. American Family is entitled to summary judgment on its declaratory judgment claim as well as that for breach of contract.**

Plaintiffs suggest that should the Court grant summary judgment for American Family for breach of contract, the Keslings' declaratory judgment claim should not then also be dismissed, since the declaratory judgment claim is "inextricably linked" to the Keslings' bad faith breach of

7

insurance contract claim. American Family does not understand the distinction which Plaintiffs seek to draw as between a breach of contract and declaratory judgment claims, and perceives no basis to treat these two claims differently for summary judgment purposes. In their claim for declaratory relief, Plaintiffs seek a declaration "as to the extent of American Family's obligation to cover the foregoing damage and resulting and/or consequential loss to the residence." The claim for declaratory judgment is, in practical and legal effect, redundant to their breach of contract claim, in that in both claims, Plaintiffs ask the Court to award damages against American Family as to that portion of the claim which falls within coverage. However, the import of the Policy's one year suit limitation is that the Keslings forfeit any and all coverages by failing to comply therewith. Since compliance with the Policy's one year suit limitation is a precondition to recovery under the Policy, then Plaintiffs' breach of this Policy condition is determinative of any claim for coverage, regardless of the theory of recovery under which it is brought.

WHEREFORE, Defendant American Family Mutual Insurance Company requests the Court to enter summary judgment in its favor on Plaintiffs' First and Second Claims for Relief for declaratory relief and breach of contract.

Respectfully submitted this 8th day of July 2011.

_s/ Colin C. Campbell_
Colin C. Campbell, Esq.
CAMPBELL, LATIOLAIS & RUEBEL, P.C.
825 Logan Street
Denver, CO 80203
Telephone: (303) 861-7760
*Attorneys for Defendant American Family*

# CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July 2011, I electronically filed a true and correct copy of the foregoing **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Giovanni M. Ruscitti, Esq.
Justin Colby Berg, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

*/s/ Stacey M. Curtin*
*[A duly signed original is on file at the law offices of*
*Campbell, Latiolais & Ruebel, P.C.]*