**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-01441-PAB-CBS

JACK KESLING and
MICHELLE KESLING,

Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

Defendant.
_____

**DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**
_____

Defendant American Family Mutual Insurance Company, by its attorneys Campbell, Latiolais & Ruebel, P.C., pursuant to Fed. R. Civ. P. 56, hereby submits its Second Motion for Summary Judgment, wherein Defendant requests the Court to enter judgment in its favor on all claims asserted against it.

## INTRODUCTION

On May 23, 2011 American Family moved for partial summary judgment on Plaintiffs' claims for breach of contract and for declaratory judgment (Document 30), on grounds that Plaintiffs had breached the policy provision requiring them to bring suit against American Family within one year after the loss or damage occurs. American Family's Motion for Partial Summary Judgment has been briefed and remains pending before this Court.

Through this present Motion, American Family submits its remaining legal grounds for entry of summary judgment in its favor, separate and apart from the policy's one year suit limitation. This Motion will address the following additional reasons why American Family is

entitled to entry of judgment in its favor: (1) Plaintiffs cannot meet their burden of proof of demonstrating that they have incurred "resulting loss" within policy coverage; (2) Plaintiffs cannot meet their burden of proof of demonstrating the claimed losses occurred within the policy period; and (3) American Family did not act in bad faith in denying Plaintiffs' claim given that Plaintiffs have not proven a covered loss.

## STATEMENT OF UNDISPUTED FACTS

1. On July 17, 2007 the Keslings purchased and closed on a home located at 5133 Echo Valley Road in Larkspur, Colorado. (Affidavit of Jack Kesling, Ex. 1 to Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment ["Response Brief"], filed 6/24/11 [Document 36-1], paragraph 2).

2. The Keslings moved into their home in September of that year, and purchased an American Family homeowner's policy with an effective date of September 19. 2007. (Document 36-1, paragraphs 2, 3).

3. On or near June 27, 2008 the Keslings discovered the surface of their outdoor deck was "bubbling and lifting off the stairs." (Ex. G to Defendant's Reply re Motion for Partial Summary Judgment, filed 5/28/11 [Document 37-1], at p. 1).

4. Shortly thereafter, they observed during a rainstorm water entering into a ground floor bedroom window located beneath the deck. On August 20, 2008 they e-mailed the seller of the home, Steve Dulaney, to inform Mr. Dulaney the Keslings were experiencing "massive cracking, lifting and leaking issues on the west deck," and that "the deck has continued to peel

2

5. and leak and we are now experiencing water running through the exterior foundation walls into the home." (Document 37-1, p. 3).

5. The Keslings hired a forensic engineer, Neil Mekelburg, to inspect the damage and recommend necessary repairs. Mr. Mekelburg issued an October 31, 2008 report, in which he concluded that defective construction of the deck had allowed moisture to intrude into and damage the underlying deck structure. (Ex. 3 to Response Brief [Document 36-3] p. 7 of 7, paragraph 4.0). Mr. Mekelburg recommended the deck structure as a whole be removed, redesigned and reinstalled, to include the proper tie-in to the wall system of the residence. (Document 36-3, p. 6 of 7, paragraph. 3.0-A).

6. On March 11, 2009 Blu SKY Restoration submitted a proposal to perform the recommended "deck remodel" at a cost of $342,259. (Ex. A, attached).

7. Several months thereafter the Keslings requested Mr. Mekelburg to return and perform a more comprehensive inspection of the residence, to identify any other construction defects that may exist in the home apart from those relating to the water intrusion into the deck. Mr. Mekelburg issued an ensuing June 18, 2009 report, in which he identified various construction defects relating to the home's crawl space, stucco cladding system, roofing and window and door installation. (Ex. 4 to Response Brief [Document 36-4]).

8. Blu SKY Restoration itemized $443,398.50 in costs to repair the newly identified construction defects. (Ex. B, attached, p.12).

9. Neither the Mekelburg June 18, 2009 report, nor the associated Blu SKY Restoration repair estimate, identified a need to perform any additional water remediation repair beyond that previously identified in Mr. Mekelburg's prior October 31, 2008 report. (Documents 36-3, 36-4, Ex. B).

10. On July 16, 2009 the Keslings filed suit in Douglas County District Court against the home sellers, Steven and Janet Dulaney, alleging the Dulaneys had known of, but had failed to disclose the identified construction defects, including the defective construction of the deck and associated water damage to the deck structure. (Ex. C, attached).

11. The Keslings eventually settled with the Dulaneys for an amount that exceeded the collective cost to repair the damages identified in the two Mekelburg reports.

## ARGUMENT

**1. Plaintiffs have failed to demonstrate any "resulting loss" covered under the Policy.**

The Policy contains the following exclusions found in the **EXCLUSIONS – SECTION I** section of the Policy (see, Exhibit A-1 to MPSJ [Document 30-1], page 7 of 16):

> "Part C.
>
> The following exclusions apply to coverage A – Dwelling and Dwelling Extension. We do not insure for loss caused by any of the following.
>
> 2. Planning, Construction or Maintenance, meaning faulty, inadequate or defective;
>
>    a. construction, reconstruction, repair, remodeling or renovation;
>    b. materials used in construction, reconstruction, repair, remodeling or renovation;
>    c. design, workmanship or specifications of part or all of the insured premises or any other property.

4

> However, we do cover any resulting loss to property described in coverage A – Dwelling and Dwelling Extension not excluded or excepted in this policy."

Plaintiffs concede that by virtue of this language, the cost to repair any of the construction defects identified in either of the two Mekelburg reports is excluded from coverage under the Policy. Rather, Plaintiffs claim coverage only for any "resulting loss" as may have occurred from defective construction. The question then becomes whether Plaintiffs have proven the fact of resulting loss, and if so, the amount of such loss occasioned by defective construction of their home.

There are no Colorado appellate cases on point which interpret this particular exclusion. We must thus look to case law from other jurisdictions for persuasive authority as to what qualifies as "resulting loss" as an exception to the defective construction exclusion.

There is a body of case law from other jurisdictions which interprets similar homeowner's policy exclusionary language. The construction defect exclusion is found in most, if not all homeowners' insurance policies. Such exclusions typically add coverage back in, as an exception to the exclusion for "ensuing loss" or "resulting loss" that arises by virtue of the excluded defective condition, which is not otherwise excluded. American Family submits there is no meaningful difference between the terms "ensuing loss" and "resulting loss," such that they should be construed to mean the same thing for purposes of coverage analysis.

Those jurisdictions which have construed the homeowner's policy "ensuing loss" and "resulting loss" provisions have concluded this exception applies only where the excluded loss leads to a *separate* and *independent* loss or injury, which new and separate loss does not fall within the scope of an exclusion. See, for example, the following discussion in *Weeks v. Co-Operative Ins. Cos.,* 817 A.2d 292, 296 (N.H. 2003):

> We interpret the ensuing loss provision to apply to the situation where there is a "peril," i.e., a hazard or occurrence which causes a loss or injury, *separate and independent* but resulting from the original excluded peril, and this new peril is not an excluded one, from which loss ensues . . .." Thus, the exception to the exclusion operates to restore coverage if the damage ensues from a covered cause of loss. "Reasonably interpreted, the ensuing loss clause says that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered. The uncovered event itself, however, is never covered."

The New Hampshire Supreme Court concluded that where faulty workmanship was the "dominant and efficient" cause of the damage, then all of the damage directly resulting from the faulty workmanship is excluded as well. *Id* at 296.

The Massachusetts Appellate Court reached a similar conclusion in *Hanover New England Ins. Co. v. Smith,* 621 N.E.2d 382 (Mass. App. 1993). In *Hanover*, a malfunction in an electrical relay switch in the defendant's oil furnace allowed oil to leak out of the furnace and eventually travel onto and damage the family room floor and carpeting. The Massachusetts Appellate Court determined the damage to the family room floor was not an "ensuing loss," because it was directly caused by an excluded event, i.e., a mechanical breakdown. As the Court explained,

> Indirect or "ensuing" losses would include those resulting from a fire caused by the presence of the oil or from a collapse or spill caused by the disintegration of oil-soaked structural components or the presence of slippery surfaces.

*Id* at 383. Again, "ensuing loss" is distinguished from losses directly caused by the excluded hazard such as faulty construction.

Perhaps the closest case on point factually is *Sapiro v. Encompass Ins.,* 221 F.R.D. 513 (N.D. Cal. 2004). In *Sapiro*, negligent construction had left a gap between metal flashing in the stucco on the exterior walls of a home, which allowed water to penetrate into the home and cause

substantial damage. The Appellate Court determined that all of the claimed losses, including the cost to remediate the ensuing water damage, were excluded by operation of the policy's "faulty workmanship" exclusion. The Court rejected the homeowner's argument that the "ensuing loss" clause operated to restore coverage, stating as follows:

> California's courts have long defined an "ensuing loss" as a loss "separate" and "independent" from an original peril (citations omitted). Plaintiff's losses are neither; they are, rather, abstrusely phrased reformations of the same "gap" – related losses – losses plaintiffs concede are excluded by Safeco's "faulty workmanship" clause . . . . In fact, none of the supposedly "ensuing losses" plaintiffs identify can be categorized as "ensuing losses," if even "losses" at all. Plaintiff's alleged "moisture" and "fungal" losses are directly attributable to the initial negligent contracting. Plaintiff's "reconstruction" costs are neither separate nor "ensuing" by any legitimate measure; they are the price of repairing the predicate damage.

*Id.* at 522. *See also Vermont Electric Power Co., Inc. v. Hartford Steam Boiler Inspection and Ins. Co.,* 72 F.Supp.2d 441 (D. Vermont 1999) (where a property insurance policy contains an exclusion with an exception for ensuing loss, courts have sought to assure that the exception does not supersede the exclusion by disallowing coverage for ensuing loss directly related to the original excluded risk).

In this instance, Plaintiffs claim the water damage to the deck structure and adjoining elements of the home are restored to coverage through the "resulting loss" exception to the faulty workmanship exclusion. As the above-referenced case law makes clear, water damage caused by the negligent failure to adequately waterproof the deck is not an ensuing loss, but rather a loss directly related to the original excluded risk, and thus still within the scope of the excluded loss.

Plaintiffs have failed to identify any separate and independent cause of loss other than the faulty workmanship in constructing the Plaintiffs' home, including the failure to adequately waterproof the home from moisture damage. All of Plaintiffs' claimed damages directly flow

7

from the excluded defective workmanship. Plaintiffs' claimed loss is therefore excluded from coverage as a matter of law.

**2. Plaintiffs have failed to demonstrate occurrence of property damage within the Policy Period.**

The Policy's **INSURING AGREEMENT** defines "occurrence" as an accident, including exposure to conditions, which results during the Policy period in bodily injury or property damage. (See Exhibit A-1 to MPSJ [Document 30-1], page 1 of 16, paragraph 9). Hence, the Policy would only cover that property damage which occurred following the Policy's September 19, 2007 inception date. Even if Plaintiff were able to identify "resulting loss" to their property, such resulting loss would only be covered if it occurred after September 19, 2007.

Plaintiffs' retained expert Neil Mekelburg has concluded the deck framing and other supporting structure has been so compromised by water damage that the entire deck structure, as well as the supporting columns, need to be replaced. Mr. Mekelburg concedes that the water damage to the deck structure occurred progressively over time, beginning sometime after the home was first built in 2003 and continuing through his discovery of the extent of the damage through his October 14, 2008 inspection. The critical inquiry then becomes when the damage progressed to the point where the deck needed to be replaced, since any additional exposure of the deck structure to water from that point forward would not add to the already existing cost to replace the water-saturated deck.

Neil Mekelburg is the only witness identified by either party competent to address the dates on which any alleged resulting loss occurred. Mr. Mekelburg acknowledged in deposition that he cannot say when the water damaged deck progressed to the point that the deck structure needed to be replaced:

> Q: At what point in time did the deck framing become so compromised that the framing itself needs to be replaced rather than just simply putting on a new coating?
>
> Mr. Berg: Objection. Form.
>
> A: I can't pinpoint a specific time. We obviously looked at it in 2008 and again in 2009. I could observe what was damaged at that point, but I can't go back and identify exactly when the structure got to a point where it was unsafe and needed to be replaced.

(Ex. D, attached Mekelburg deposition, page 64, ll. 8-18).

Mr. Mekelburg clarified that he saw no signs of increased moisture damage to the deck between his October 31, 2008 inspection and subsequent June 2009 visit:

> Q: And given the scope of why you were out there in 2009, you have not made any observations as to whether there was any progressive moisture damage to the framing elements to the deck between your visits?
>
> A: We did not.

(Ex. D, page 66, ll. 11-16).

Mr. Mekelburg went on to acknowledge that, given his inability to pinpoint when the deck became so compromised as to require replacement, he was unable to say whether any of the water damage took place after the American Family homeowner's Policy went into effect:

> Q: And can you pinpoint any of the damage to the framing elements of the deck as having occurred after September or 2007 but before your site visit on October 14, 2008?
>
> Mr. Berg: Objection. Form. Foundation.
>
> A: No I cannot.

(Ex. D, page 68, ll. 4-10).

9

It remains Plaintiffs' burden to prove the fact and amount of resulting loss occurring within the Policy period, rather than American Family's burden to show that the loss predated Policy inception. As a general principle, the insured retains the burden to prove his or her entitlement to recover under the general provisions of the policy, (as well, for that matter, to prove the applicability of an exception to a term of exclusion). *See Rodriquez v. Safeco Ins. Co.*, 821 P.2d 849, 853 (Colo. App. 1991). Indeed, the 10th Circuit reversed a jury award in a coverage case in the insured's favor, where a jury instruction had improperly placed the burden of proof on the insurer to prove its rebuttal argument against coverage. *See Adams-Arapahoe Joint School District No. 28-J v. The Continental Ins. Co.*, 891 F.2d 772, 778 (10th Cir. 1989).

If water damage to the deck were to constitute resulting loss – which American Family contends it does not – then it would still remain Plaintiffs' burden of proof to establish that portion of the water damage necessitating deck replacement which occurred after the September 19, 2007 inception of the Policy. Plaintiffs' only identified witness competent to perform such an exercise, Neil Mekelburg, has conceded in deposition that he is unable to state whether any of the damage necessitating deck replacement occurred after September 19, 2007. Hence, Plaintiffs have failed to establish a critical element of a prima facie case for coverage through their inability to demonstrate that property damage occurred during the Policy period, as a matter of law.

Plaintiffs' claim for coverage under the American Family homeowners policy is antithetical to their state court lawsuit filed in Douglas County District Court against the Dulaneys, the sellers of their home. The Keslings contended in the state court lawsuit that the Dulaneys sold them a home already substantially compromised by water damage, and secured a large settlement through that lawsuit. The American Family policy does not provide coverage for

such water damage as had already occurred when the Dulaneys sold the home. Plaintiffs cannot recover from both the Dulaneys and American Family for the same repair costs; to the extent the Dulaneys sold the Keslings a damaged home, their only recourse is against the Dulaneys, and not American Family.

**3. American Family did not act in bad faith in denying Plaintiffs' claim.**

In addition to seeking payment of covered benefits under the Policy, Plaintiffs further seek extra contractual damages, on grounds that American Family acted in bad faith by willfully and/or recklessly failing to perform an adequate investigation or properly interpret its own Policy terms. Plaintiffs allege that had American Family conducted its claims investigation in good faith, it would have paid some undefined amount of insurance benefits to them. All of Plaintiffs' claimed extra contractual damages – primarily involving emotional distress due to financial concerns – were prompted by American Family's denial of their claim. Hence, the lynchpin to Plaintiffs' claim for bad faith claims handling is that American Family wrongfully denied their claim.

Should the Court grant American Family summary judgment on the breach of contract claim – on any of the three separate grounds asserted, including breach of the one year suit limitation argued in American Family's previous motion – then Plaintiffs' bad faith claim must also fail as a matter of law. A determination by the Court that the Keslings' claim for repair of water damage to their deck does not fall within Policy coverage necessarily entails a correlative finding that American Family made the correct coverage determination in denying the Keslings' claim in the first instance. In simple terms, if their claim was not covered, then they were not treated wrongfully through American Family's coverage denial.

Nor may Plaintiffs maintain a bad faith claim based solely upon the premise that American Family should have conducted a more intensive investigation. At this point, Plaintiffs have developed all the information which they believe is supportive of their coverage claim. In the event the Court finds such evidence to be deficient to establish coverage, then it necessarily follows that any further investigation by American Family would have led to the very same determination that no coverage existed for the Plaintiffs' claimed loss. Again, a legal determination of lack of coverage defeats the bad faith claim as a matter of law.

In almost all cases involving a first party coverage dispute, a determination in the insurer's favor is fatal to the bad faith claim as well. For example, in *Rodriguez v. Safeco Ins. Co.*, 821 P.2d 849 (Colo. App. 1991), the trial court's finding that no coverage existed under a homeowners policy for a loss falling under the business pursuits exclusion led to summary judgment on both the contract and bad faith claims. To American Family's knowledge, the only appellate decision which has recognized an award of bad faith damages in the absence of breach of contract is *Herod v. Colorado Farm Bureau Mut. Ins. Co.*, 928 P.2d 834 (Colo. App. 1996), but *Herod* is factually and legally distinguishable from the instant case. In *Herod*, a jury found that Colorado Farm Bureau had wrongfully denied a property damage claim under a homeowner's policy, even though the breach of contract claim was dismissed as having been time barred under the policy. In other words, the jury found Colorado Farm Bureau should have paid the claim, such that their bad faith denial of the claim occurred before the time limitation for bringing suit under the policy expired. The instant case is different, in that (1) there is no coverage under the Policy in the first instance, given the absence of "resulting loss" occurring during the Policy period, and (2) the time deadline for pursuing a claim under the Policy had already expired before Plaintiffs submitted any information to American Family in support of

their claim. As set forth in American Family's first motion for summary judgment, the Keslings first learned of the water damage to their deck in late June 2008, thereafter initiated a claim under their Policy as of August 20, 2008, and then abandoned their claim before attempting to revive it more than a year thereafter. If in fact Plaintiffs' claim had already expired before they asked American Family to do anything, then American Family cannot be liable under either contract or tort theory.

WHEREFORE, for the reasons set forth above, Defendant American Family respectfully requests an order granting summary judgment in its favor, and against the Plaintiffs, on all claims.

Respectfully submitted this 8th day of August, 2011.

      s/ Colin C. Campbell
Colin C. Campbell, Esq.
CAMPBELL, LATIOLAIS & RUEBEL, P.C.
825 Logan Street
Denver, CO 80203
*Attorneys for Defendant American Family*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 8th day of August, 2011, I electronically filed a true and correct copy of the foregoing **DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Giovanni M. Ruscitti, Esq.
Justin Colby Berg, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

                                              */s/ Stacey M. Curtin*
                                              *[A duly signed original is on file at the law offices of*
                                               *Campbell, Latiolais & Ruebel, P.C.]*