UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01441-RBJ-CBS

JACK KESLING and
MICHELLE KESLING,

Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

Defendant.

---

**DEFENDANT'S COMBINED REPLY RE: SECOND MOTION FOR SUMMARY
JUDGMENT AND RESPONSE TO CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

Defendant American Family Mutual Insurance Company, by its attorneys Campbell, Latiolais & Ruebel, P.C., pursuant to Fed. R. Civ. P. 56, hereby submits its Combined Brief including its Reply to its Second Motion for Summary Judgment and Response to Plaintiffs' Cross Motion for Partial Summary Judgment.

## INTRODUCTION

In support of its Second Motion for Summary Judgment, Defendant argues that (1) plaintiffs cannot meet their burden of proof of demonstrating that they have incurred "resulting loss" within policy coverage; (2) plaintiffs cannot meet their burden of proof of demonstrating the claimed losses occurred within the policy period; and (3) American Family did not act in bad faith in denying plaintiffs' claim given that plaintiffs had not proven a covered loss. This motion followed American Family's May 23, 2001 Motion for Partial Summary Judgment on grounds

that plaintiffs had breached the policy provision requiring them to bring suit against American Family within one year after the loss or damage occurred.

In response to the Second Motion for Summary Judgment, plaintiffs argue that Defendant's interpretation of the resulting loss exception is contrary to law (or that it is ambiguous), that there exists inferential evidence of an "occurrence" during the policy period, and that their bad faith claim survives even if there is no coverage under the policy.

In addition, plaintiffs filed an untimely Cross Motion for Partial Summary Judgment, requesting declaratory judgment enter in their favor as to coverage under the policy. (Dispositive motions were due August 8, 2011. Plaintiffs did not seek an extension, but filed for a request for summary judgment out of time, captioned "cross-motion" but seeking dispositive relief.). They incorporate the arguments raised in their response to Defendant's Second Motion for Summary Judgment, emphasizing that the recent case of *RK Mechanical, Inc. vs. Travelers Prop. Cas. Co. of America*, decided by Magistrate Judge Kathleen Tafoya of the United States District Court for the District of Colorado, supports their position and is dispositive of how Colorado courts would interpret the policy language. Notably, however, Judge Tafoya's decision actually supports American Family's arguments, as she cites as authority for her ruling the case of *Cooper vs. American Family*, a case not only on all fours with the instant case, but one which adheres to the line of cases cited in Defendant's Second Motion for Summary Judgment, interpreting the ensuing loss or resulting loss provision to apply to occurrences which cause loss "separate and independent" from the original excluded peril.

## SUMMARY OF DEFENDANT'S REPLY

1. With respect to the resulting loss provision, Plaintiffs' argument fails for three reasons. First, it incorrectly assumes that the deck is not a single component, and that faulty

2

workmanship in constructing and designing the entire deck somehow creates a "resulting loss" to a single part of the deck. Second, the interpretive case law – *including the recent decision from the District of Colorado*, compel the conclusion that "resulting loss" provisions apply only where the excluded loss leads to a *separate* and *independent* loss or injury, which new and separate loss does not fall within the scope of an exclusion. Third, and under either party's interpretation of the resulting loss provision, the net result is the same – the policy affords no coverage because Plaintiffs' expert's acknowledged cause of the deck's structural component damage is rust and rot, both of which are "Losses Not Covered" under the policy.

2. Plaintiffs cannot sustain their burden of proving that the damages occurred during the policy period. While the evidence indicates substantial damage before the policy was in place, and the Plaintiffs' complaint against the seller alleges such prior damage, no witness can testify that the damage occurred after the policy was purchased. Plaintiffs' expert's untimely affidavit must be rejected under the Sham Affidavit doctrine, and case law supports Defendant's position.

3. Finally, there is no authority for Plaintiff's argument that, absent a breach of contract, bad faith is still actionable. An insurer may challenge a claim that is "fairly debatable" and will be found to have acted in bad faith in doing so "only if it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." An insurer's assertion of a reasonable position in a lawsuit concerning the policy and benefits due under the policy precludes assertion of an insurance bad faith claim. The body of case law fully supports Defendant's coverage position, and regardless of alternative authority, there can be no bad faith.

## STATEMENT OF ADDITIONAL UNDISPUTED FACTS

12. The Keslings' residence includes a large, wraparound exterior deck. The deck support structure is a combination of wood frame and structural steel. The decking materials

consist of plywood sheathing, overlain by an elastometric waterproofing membrane and a top surface of epoxy stone wear. (BornEngineering 10/31/08 report, paragraph 1.0.C, Exhibit 3 to Kesling's Response to Defendant's Motion for Partial Summary Judgment – Doc. 36-3.)

13. Neil Mekelburg of BornEngineering has recommended the entire deck be replaced. Mr. Mekelburg recommends replacement of the elastometric membrane and the epoxy stone topping because these are inappropriate materials for this application. (BornEngineering 10/31/08 report, Doc. 36-3, paragraph 3.0.B) Mr. Mekelburg recommends replacement of the wood and steel support structure because the steel has become rusted and the wooden joists "severely rotted" due to sustained moisture infiltration beneath the deck surface. (BornEngineering report, Doc. 36-3, paragraph 2.0.I.3; paragraph 2.0.J.1 and paragraph 2.0.K.1.

14. Blu Sky Restoration has submitted a 3/11/09 proposal to replace the deck in its entirety at a cost of $342,259. (Attached Exhibit E). To date, despite repeated requests, Plaintiffs have not produced Blu Sky Restoration's itemized repair estimate from which the one page 3/11/09 Proposal was generated. (Attached Exhibit F).

15. Colorado Amendatory Homeowners Endorsement to the Policy provides that LOSSES NOT COVERED include loss "resulting directly or indirectly, or consisting of, or caused by one or more of the following." The listed non-covered causes of loss include "wear and tear", "deterioration", "rust", as well as "wet or dry rot." (Attached Exhibit G).

16. The previous homeowners, Steve and Janet Dulaney, experienced problems with the deck after they first moved in during the fall of 2003. They observed signs of water running

across the ceiling of the interior finishes to their home, beneath the deck surface. (Exh. H, Stephen Dulaney deposition, pp. 67-68.)

17. The Dulaneys observed signs of renewed leaking to the deck in 2006, and once again resurfaced the deck.(Exh. H, pp. 105-107). In performing this work, the Dulaneys exposed, but did not replace the plywood decking which covered the deck framing. (Exh. H, p. 112).

18. Mr. Dulaney was aware that water infiltration could compromise the structural integrity of the deck, (Exh. H, p. 155), and acknowledged the deck was not in a sound and good condition when he sold the home to the Keslings. (Exh. H, p. 206).

19. The Keslings sued the Dulaneys for, among other things, fraudulent misrepresentation and fraudulent concealment about existing defects and damages to the home, of which they knew, including damage to the surface and structural members of the deck that were all caused by a "defectively designed an/or constructed deck system", an "improper application of weatherproofing materials", "precipitation ponding" on the deck surface, and other defects. (Exhibit C, Doc. 42-3, paragraphs 24 a & b, 25, and 64-77.)

**RESPONSE CONCERNING DISPUTED FACTS**

9. Plaintiffs have contested Defendant's assertion in paragraph 9 of its "Undisputed Facts" that Bornengineering's second report of June 18, 2009 does not identify any ensuing water remediation damages arising from those alleged construction defects addressed in the report. Defendant relies on the report itself as demonstrating that no water remediation damages are discussed therein.

In addition, Neil Mekelburg of Borne Engineering clarified through his deposition testimony that those alleged defects listed in his second report – relating to crawl spaces, stucco,

window and door installation and roofing – did not implicate any damages beyond the cost to repair the defective construction itself. (See Mekelburg deposition, pp. 26, 28, 34 , 50 and 53, Exh. I.) It therefore remains undisputed that the second BornEngineering report does not identify any covered losses.

Plaintiffs have not otherwise contested Defendant's undisputed facts.

## REPLY CONCERNING UNDISPUTED FACTS

Plaintiffs set forth 19 paragraphs of proposed "Additional Material Facts," the bulk of which refer to various witnesses' testimony concerning their views of policy coverage under the given circumstances of the loss. As a general matter, Defendant disputes the materiality of these proposed "facts." Because extrinsic evidence cannot be used to vary the plain meaning of insurance policy terms, expressions of parties' or witnesses' intent is inadmissible in the absence of an ambiguity in the policy language. See *KN Energy, Inc. v The Great Western Sugar Company*, 698 P.2d 769, 777 (Colo. 1985).

Moreover, an insured may not invoke waiver or estoppel against an insurer to create coverage which does not otherwise exist under the policy. *Mgt. Specialists Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 37 (Colo. App. 2004). Hence, even if American Family's claim representatives misconstrued their own policy – which Defendant does not believe to have been the case – this circumstance would not alter the status of policy coverage, or lack thereof. Interpretation of policy coverage remains a legal determination, with regard to which plaintiffs' proffered witness testimony is immaterial.

Should the Court consider Plaintiffs' proffered deposition testimony to be pertinent, Defendant disputes as misleading and inaccurate Plaintiffs' description of the testimony presented by American Family claims representatives Robert Tamminga III, Robert Tamminga, Jr. and Dale

Wheeler. As one notable example, Plaintiffs suggest Robert Tamminga, Jr. conceded coverage existed, at least in part, for the claimed deck replacement as a resulting loss from the defective construction of the deck. In fact, Tamminga testified that he did not consider the deck replacement to be covered, since the losses were barred under the defective construction and/or rot, corrosion, and deterioration exclusions, and he did not see how any reasonable person might conclude otherwise. (Exh J, Tamminga deposition, pages 31-33.)). Robert Tamminga III and Dale Wheeler were equally consistent in expressing their views hat the claim to replace a rotted deck was excluded from coverage.

Defendant asserts the following position concerning these proposed facts, consistent with the above general comments.

1. Disputed. See exhibit G to Defendant's Reply Brief in support of its first summary judgment motion (Kesling emails to the sellers describing the deck as observed in June 2008 to have peeled and leaked, with water running through exterior foundation walls).

2. Undisputed that Plaintiffs submitted their notice of claim on August 20, 2008. Disputed that plaintiffs' characterized problem as a "wrinkle"; see exhibit G to first summary judgment motion reply brief.

3. Undisputed that first BornEngineering report was prepared October 31, 2008, which report speaks for itself.

4. Disputed that the Keslings were unaware of the extent of the damage; see exhibit G to Defendant's first motion for summary judgment.

5. Undisputed that BornEngineering submitted a second, June 18, 2009 report. Disputed that the report identified any covered losses.

6. Disputed that the second BornEngineering report identified any losses for which plaintiffs claim coverage.

7. Undisputed that the referenced January 5, 2011 letter was sent, which letter speaks for itself. Materiality is disputed.

8. Undisputed that the subject letter speaks for itself. Materiality is disputed.

7

9. Undisputed that the referenced written communication was sent. Materiality of deposition testimony of intent is disputed.

10. Undisputed that Robert Tamminga III considered coverage for the claimed loss to be barred by the faulty workmanship, rot, corrosion and deterioration exclusions. Materiality of extrinsic expressions of intent is disputed.

11. Undisputed there was no evidence presented of when the rot to the deck framing occurred. Materiality of extrinsic evidence of intent is disputed.

12. Undisputed Defendant did not retain an engineering expert. Materiality of extrinsic expressions of intent is disputed.

13. Materiality of extrinsic expressions of intent is disputed.

14. Denied that Robert Tamminga, Jr. admitted that covered resulting loss occurred. See Exh. J, in which he set forth his view that the policy clearly and unambiguously excluded coverage for a deck replacement occasioned by faulty workmanship, rot, rust, corrosion and deterioration. Materiality of extrinsic expressions of intent is also disputed.

15. Disputed that Steve Dulaney claimed his repair efforts were successful. Mr. Dulaney admitted in deposition that the deck was not properly repaired, and that the deck was not in a sound or good condition when he sold the home to the Keslings. (Dulaney deposition, Exh. H, p. 206).

16. Disputed that Mekelburg has offered competent testimony quantifying cost to repair defective work as distinct from the cost to repair consequential loss. Mekelburg relied on documentation in Blu Sky Restoration's job file to attempt such an allocation, which documentation he has since been unable to reproduce and which has never been shared with Defendant..

17. Disputed that an engineer's reading of policy language is material to a legal determination of coverage.

18. Disputed that Mekelburg expressed competent opinion in deposition as to when the rot necessitating deck replacement occurred. Mekelburg testified that he could not say when the deck became so compromised by rot as to require replacement..

19. Disputed that Plaintiffs may rely on a supplemental report prepared 4 months after the deadline for plaintiff expert disclosure had passed and 3 weeks after discovery was closed.

## ARGUMENT

**1. Plaintiffs have failed to demonstrate any resulting loss covered under the Policy**

In their Complaint, Plaintiffs allege that American Family was obligated under the policy to pay for the cost to replace the defectively constructed deck to their home which they had purchased the previous year. (Paragraphs 12 and 28 of the Complaint). In their briefing, the Keslings have now admitted that the cost to repair the defectively constructed deck is excluded from coverage under the policy. The Keslings now assert, as a fall-back position, that even though American Family owed no obligation to repair or replace the defective construction, that some elements of the deck reconstruction constitute a "resulting loss", meeting an exception to the faulty workmanship exclusion.

This argument improperly assumes, in the first instance, that the deck is not a single component or product of the construction work. As alleged in Plaintiffs' suit against the builder/seller of that property, the damage to the surface and structural members of the deck were all caused by a "defectively designed an/or constructed deck system", an "improper application of weatherproofing materials", "precipitation ponding" on the deck surface, and other defects. (Exh C, Doc. 42-3, paragraphs 24 a & b). To argue that damage to one portion of the deck structure is a resulting loss to another portion of the same deck is both illogical and legally unsupportable. All of the deck damage is the result of the faulty deck construction. In *Weeks v. Co-Operative Insurance Companies*, 817 A.2d 292 (New Hampshire, 2003), defective construction of a brick veneer wall caused it to separate from the asphalt shingle wall to which it was built. The court found that none of the wall separation damages were covered because all were the result of faulty workmanship. To find otherwise, the Court stated, would render the negligent work exclusion meaningless.

9

In its Second Motion for Summary Judgment, Defendant emphasized the body of law construing the "resulting loss" provisions as having application only where the excluded loss leads to a *separate* and *independent* loss or injury, which new and separate loss does not fall within the scope of an exclusion. Although Plaintiffs claim that the water damage to the deck structure itself is restored to coverage through this exception to the faulty workmanship exclusion, the case law makes clear that the water damage caused by the negligent design, construct and failure to adequately waterproof the deck was not an ensuing or resulting loss, but rather a loss directly related to the original excluded risk, and thus still within the scope of the excluded loss.

Plaintiffs argue that, because Colorado courts have yet to interpret the resulting loss provision, the recent decision by Magistrate Judge Tafoya in *RK Mechanical, Inc. vs. Travelers Prop. Cas. Co. of American AM*, 2011 WL 3294921, at 6-7 (D. Colo. August 1, 2011) supports coverage here and contradicts the case law cited in support of Defendant's position.

The only issue addressed in the *RK Mechanical* case was whether coverage existed for the removal and replacement of the plumber insured's work product (defective flanges), which allegedly created a future "risk of loss." The Court concluded that there was no coverage under any circumstances as faulty, inadequate and defective materials, workmanship and maintenance were all causes of loss listed as exclusions, which cannot be read to be "covered causes of loss". As such, this holding does not support Plaintiffs' argument.

The Court also discussed the ensuing loss provision, quoting *Cooper vs. Am. Family Mut. Ins. Co.*, 184 F.Supp.2d 960, 964 (D. Ariz., 2002), for the proposition that an ensuing loss clause "does not reinsert coverage for excluded losses, but rather reaffirms coverage for secondary losses ultimately caused by excluded perils." Plaintiffs seize upon this language in arguing that

they are entitled to coverage, not for the defective construction of their deck, but for water damage to the deck resulting from the faulty design, construction and waterproofing. The *Cooper* case, however, fully supports American Family's position in this case. In that lawsuit, a homeowner reported a plumbing leak which damaged drywall and flooring. The insurer paid for repairs to the drywall and flooring, but denied coverage for all such damage caused by mold. The Court granted American Family's motion for summary judgment notwithstanding the homeowner's arguments, which were identical to those advanced by the Plaintiffs in this case.

RK Mechanical argued that, because the claim involved a loss resulting from a covered accidental event, all ensuing loss, including mold should be covered under the resulting loss provision. The Court rejected this argument that the mold was not a separate cause of loss, but instead a resulting loss caused by the plumbing leak, a covered event. The Court noted that this argument sought to interject a distinction into the American Family policy that simply did not exist.

The Keslings argue that inserting the phrase "separate and independent" in front of the phrase "resulting loss" contradicts the exclusionary clause and would render the exception meaningless. The *Cooper* Court, addressing a similar claim, flatly rejected that argument. In the Court's words, at p. 964:

> "The Plaintiff argues that the resulting loss clause contradicts the exclusions. The Court disagrees. By its very wording, the "resulting loss" clause only reaffirms coverage for "resulting loss"… not excluded or excepted in the policy. As pointed out by American Family, Courts from other jurisdictions have construed similar "ensuing loss" provisions in the same manner. For example, the California Court of Appeals explains:
>
>> "We interpret the ensuing loss provision to apply to the situation where there is a "peril" i.e. a hazard or occurrence which causes a loss or injury *separate and independent* but resulting from the original excluded peril, and this new peril is not an excluded one, from which loss ensues. For example, in *Murray*, the initial

> excluded peril was the corrosion of the pipe and leakage of water, and the second resulting peril was the settling of soil. *Acme Galvanizing Co. Inc. vs. Firemans' Fund Ins. Co.*, 221 Cal. App. 3d 170, 179-180, 270 Cal. Rptr. 405, 411 (Cal. Ct. App. 1990) (emphasis added)."

The *Cooper* Court emphasized that perils which are excluded by the policy cannot be, at the same time, perils which are not excluded, and for which an insurer would be liable for any ensuing loss.

Finally, and regardless of the interpretation of the ensuing loss provision, ultimately there is no coverage for the claim because any claimed "resulting loss" is otherwise excluded under the policy. As set forth in attached Exh. G, the Amendatory Endorsement to the policy, "LOSSES NOT COVERED" include wear and tear, deterioration, rust and wet or dry rot. (p. 1, "Perils Insured Against – Section I") The policy does not cover property loss "resulting directly or indirectly from, or consisting of, or caused by" these perils, and such loss "is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." Plaintiffs' expert acknowledged that replacement of the deck's wood and steel support structure was necessary because the steel had become rusted and the wooden joists "severely rotted" due to sustained moisture infiltration beneath the deck surface. (BornEngineering report, Doc. 36-3, paragraph 2.0.1.3; paragraph 2.0.J.1 and paragraph 2.0.K.1.) As confirmed by the *Cooper* decision, at page 963, such losses (which also included mold in the policy at issue in that case) are plainly and unambiguously excluded from coverage:

> "Even in the absence of the concurrent causation clause, it is clear—and should be to a layman—that loss caused by mold is excluded. Unlike some coverage issues; where analysis and rhetoric move one from a state of complexity to a state of simplicity and clarity, the reverse is true with the mold exclusion in this policy. The policy says loss caused by mold is excluded. Enforcing the policy as written, this Court concludes loss caused by mold is excluded."

Plaintiffs' attempt to find coverage not otherwise available under the policy by invoking their "reasonable expectations" doctrine and other extrinsic evidence of the parties' respective intent. However, Plaintiffs fail to demonstrate any threshold ambiguity in the policy. They concede the policy does not cover the cost to replace defective design and/or defection construction of the deck. The policy is also clear that resulting loss otherwise excluded is not covered, and is equally clear that losses consisting of wear and tear, deterioration, rust, corrosion, and wet or dry rot are excluded. No appellate court has found the resulting loss exception to be ambiguous under similar facts, nor is a finding of ambiguity warranted here.

## 2. Plaintiffs have failed to demonstrate the occurrence of property damage within the policy period.

Defendant contends that, under the policy provision defining "occurrence" as an accident or exposure to conditions which results in damage *during the policy period*, Plaintiffs have failed to prove that such loss occurred after the policy inception date of September 19, 2007. Plaintiffs have not disputed it is their burden to prove both the fact and amount of resulting loss occurring within the policy period. Even assuming, *arguendo*, that water damage to the deck structural supports constitutes a "resulting loss", Plaintiffs cannot satisfy their burden of proof on this issue.

In response, Plaintiffs first argue that the term "occurrence" must be interpreted broadly and against the insurer. Citing *Scott's Liquid Gold, Inc. vs. Lexington Ins. Co.*, 293 F.3d 1180 (10th Circuit 2002), and two Colorado Supreme Court decisions, they argue property damage occurring gradually over time entitles the Court to make a reasonable estimate of the portion of damages attributable to each year. The *Scott's* case, however, contradicts Plaintiffs' argument and actually supports American Family's position. At issue in the *Scott's* case was the definition of "occurrence"; specifically whether property damage must also occur before an occurrence can

13

exist. The insurer had argued that the insured suffered no property damage during the policy period, and therefore no coverage existed for the claim. Although the 10th Circuit disagreed, its rationale was that the policy definition of occurrence in that case did not specify that property damage must also occur during the policy period. Absent such a temporal qualifier, as long as an "event" occurred during the policy period, it did not matter when the property damage occurred. To the contrary, American Family's policy contains such a qualifier. The policy defines "occurrence" as an accident, including exposure to conditions, which "results during the policy period" in bodily injury or property damage. (See Exhibit A-1 to MPSJ, Document 30-1, Page 1 of 6, Paragraph 9). As the *Scott's* Court recognized, such language has been upheld by the Colorado Supreme Court in a number of cases, including *Browder vs. United States Fid. and Guar. Co.*, 893 P.2d 132 (Colo. 1995); *Fire Ins. Exch. Vs. Bentley*, 953 P.2d 1297 (Colo. App. 1998); and *Samuelson vs. Chutich*, 529 P.2d 631 (Colo. 1974).

Mr. Mekelburg is the only witness identified by either party competent to address the dates on which the alleged resulting loss occurred, and he testified under oath he could not do so. Plaintiffs, in an effort to manufacture some new evidence that the loss occurred during the policy period, submit for the first time a "supplemental" expert report of Neil Mekelburg. This report contradicts Meckelberg's sworn deposition testimony to the contrary (quoted on page 9 of Defendant's Second Motion for Summary Judgment), stating now that most of the damage occurred *during* the policy period. First, this new expert report was filed after the expiration of disclosure deadlines for experts (May 2, 2011), and well beyond the discovery cutoff date (July 11, 2011), and for those reasons alone should be excluded. Plaintiffs cannot defeat summary judgment by asserting, after the court deadlines have expired, without leave of court, after the summary judgment motion is filed, new theories or testimony, and such evidence should not be

considered. *See, e.g.*, Roberts v. Arizona Board of Regents, 661 F.2d 796, 798 (9th Cir. 1981) (disallowing new allegations "raised at the eleventh hour" when "discovery was virtually complete" and summary judgment motion was pending).

More importantly, however, it must be disregarded under the Sham Affidavit Doctrine:

> "Under the Sham Affidavit Doctrine, a trial court may disregard a disputed issue of material fact in an affidavit opposing a summary judgment motion if the affidavit contradicts the affiant's previous sworn deposition testimony." *Anderson Lindenbaum*, 131 P.3d 1154, 1156-7 (Colo. App. 2005), citing *Luttgen v. Fisher*, 107 P.3d 1152 (Colo. App. 2005).

See also, *Burns v. Board of County Commissioners*, 330 F.3d 1275 (10th Cir. 2003).

Although Plaintiffs suggest that American Family failed to designate an expert to show the damage occurred outside the policy period, it remains Plaintiffs' burden to prove their entitlement to recovery under the general provisions of the policy. *Rodriguez v. Safeco Ins. Co.*, 821 P.2d 849 (Colo. App. 1991), and it is improper to place the burden of proof on the insurer to prove its rebuttal argument against coverage. *Adams-Arapahoe Joint School District No. 28-J v. The Continental Ins. Co.*, 891 F.2d 772, 778 (10th Cir. 1989).

Plaintiffs also resurrect incomplete and misleading testimony from the seller of the house (Delaney), Plaintiff Jack Kesling and Defendant's company representative in support of the argument that an inference can be drawn that the damage occurred during the policy period. Plaintiffs' claim the deck damage was only a wrinkle when they bought the house flies in the face of what was a much more significant problem. Exhibit G to Defendant's reply to its motion for partial summary judgment (Doc. 37-1) confirms the Plaintiffs reported the deck surface was "bubbling and lifting off the stairs." Mr. Dulaney acknowledged he had hired Angelo Pereyra in July 2007 to fix a leak in the deck coating. When Mr. Kesling then called Mr. Pereyra to inquire as to the specifics of this repair, he was told by Mr. Pereyra that at the time of Mr. Pereyra's July 1, 2007 visit, he observed the deck's "pebble" surface would not prevent moisture from seeping

into the deck, and that water damage to the underlying deck structure had already occurred. According to Mr. Pereyra, he was told by Mr. Dulaney not to repair the underlying structure damage, since they were selling the home shortly. Mr. Kesling then followed up with his August 20, 2008 e-mail to Mr. Dulaney (sent the same day he reported the claim to American Family), in which he described the Keslings were experiencing "massive cracking, lifting and leaking issues on the west deck," and that the "deck has continued to peel and leak and we are now experiencing water running through the exterior foundation walls into the home." Mr. Kesling requested Mr. Dulaneys' cooperation in reaching "an immediate resolution to this pressing problem."

As evidenced in Exhibit H, the Dulaneys experienced problems with the deck after they first moved in during the fall of 2003. They observed signs of water running across the ceiling of the interior finishes to their home, beneath the deck surface. They also observed signs of renewed leaking to the deck in 2006, and once again resurfaced the deck. In performing this work, the Dulaneys exposed, but did not replace the plywood decking which covered the deck framing. Mr. Dulaney was aware that water infiltration could compromise the structural integrity of the deck, and acknowledged the deck was not in a sound and good condition when he sold the home to the Keslings.

Despite the numerous facts establishing significant damage before Plaintiffs purchased the house, none of the witnesses or parties ever inspected the framing members to determine their state of deterioration, rust or rot until one year after the policy was in force. This dearth of evidence constitutes a failure of proof concerning the occurrence of damage within the policy period. Plaintiffs sued the Dulaneys on the premise that they sold a home with a defective deck, and have not and cannot present any evidence to the contrary.

**3. American Family did not act in bad faith in denying Plaintiffs' claims.**

The linchpin to Plaintiffs' claim for bad faith claims handling is that American Family wrongfully denied their claim. Should the Court grant American Family Summary Judgment on the breach of contract claim—on any of the three separate grounds addressed herein, or the one year suit limitation argued in American Family's Motion for Partial Summary Judgment, then Plaintiffs' bad faith claim must fail as a matter of law.

Plaintiffs contend that even if the breach of contract claim fails, their bad faith claim survives because "American Family did not live up to its duty to handle the claim in good faith." Plaintiffs do not dispute that the only Colorado Appellate decision recognizing an award of bad faith damages in the absence of a breach of contract is *Herod v. Colo. Farm Bureau Mut. Ins. Co.*, 928 P.2d 834 (Colo. App. 1996), and they fail to dispute that the case is factually and legally distinguishable from the instant case. In *Herod*, of course, the jury found Colorado Farm Bureau should have paid the claim, such that the bad faith denial of the claim occurred before the time limitation for bring suit under the policy expired—the basis for the unsuccessful breach of contract claim. Here, there is no coverage in the first instance, and more importantly, the time deadline for pursuing a claim under the policy had already expired before American Family was notified of the claim and began its investigation.

Rather than address the legal maxim that, absent a breach of contractual obligation, there can be no bad faith, Plaintiffs merely cite to general principles of good faith and fair dealing, and attempt to explain why, factually, American Family failed to conduct a proper investigation. These arguments beg the very question presented—whether Plaintiffs' bad faith claim survives summary judgment on the breach of contract/declaratory judgment claim.

Notably, Plaintiffs claim American Family should have repaired their home, and then stood "shoulder-to-shoulder with Plaintiffs in pursuing its right of subrogation in the underlying

construction defect litigation." There is no legal duty for a homeowner's insurer to repair a home that was defectively built. Plaintiffs' have known from the start that their claim for repair of their defectively built home did not fall within homeowners coverage, as evidenced by their decision to sue the sellers before they presented any information to American Family.

Where, as here, the rationale for not paying benefits is a legal argument, the question of bad faith is a matter of law to be determined by the Court.

> "Further, we consider the question of the reasonableness of such action [denying coverage] to be one for the court and not one for lay fact finders. To submit such a question to the jury would not only require the jurors to assess the reasonableness of a legal argument, but it would require the parties, as they were required to do here, to provide the jurors with legal advice through the guise of expert testimony. This, itself, is improper."

Tozer v. Scott Wetzel Services, Inc., 883 P.2d 496, 499 (Colo. App. 1994) (reversing judgment finding breach of duty of good faith). *See also* Brandon v. Sterling Colorado Beef Co., 827 P.2d 559, 560 (Colo. App. 1991) (holding that, as a matter of law, insurer's appeal of unfavorable coverage decision did not constitute bad faith). Moreover, where there is no genuine factual dispute, summary judgment is appropriate on the issue of reasonableness of an insurer's legal position that there is no coverage. State Farm Mut. Ins. Co. v. Lee, 353 F. Supp. 2d 1119, 1129 (D. Colo. 2005) (granting insurer's motion for partial summary judgment as to counterclaims for willful and wanton breach of contract and bad faith denial of insurance coverage).

An insurer may challenge a claim that is "fairly debatable" and will be found to have acted in bad faith in doing so "only if it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." Brandon, 827 P.2d at 561. A debatable interpretation of a complicated insurance statute, for example, even if incorrect, is reasonable and cannot be the basis for a bad faith or willful and wanton breach claim. Pham v. State Farm Mut. Auto. Ins. Co., 70 P.3d 567, 572-3 (Colo. App. 2003)(affirming summary judgment dismissing such claims). An

insurer's assertion of a reasonable position in a lawsuit concerning the policy and benefits due under the policy precludes assertion of an insurance bad faith claim. Hill v. Allstate Ins. Co., 2006 U.S. Dist. LEXIS 4635 (D. Colo. 2006). A position is not unreasonable unless it runs counter to clearly established precedent. State Farm Mut. Ins. Co. v. Lee, 353 F. Supp. 2d at 1129.

As a matter of law, American Family's position cannot have been in bad faith, as case law supports its analysis of the policy language. Regardless of the court's interpretation of the resulting loss provision, American Family's position is reasonable given the supporting law. More importantly, the policy exclusions for damage caused by rot and rust have not been challenged by Plaintiffs, are specifically excluded from any coverage under the policy, and fully support Defendant's coverage position.

## CONCLUSION

For all of the reasons set forth above, Defendant respectfully requests an order granting summary judgment in its favor, and against Plaintiffs, on all claims.

Respectfully submitted this 26th day of September, 2011.

>s/ Colin C. Campbell
>Colin C. Campbell, Esq.
>CAMPBELL, LATIOLAIS & RUEBEL, P.C.
>825 Logan Street
>Denver, CO 80203
>*Attorneys for Defendant American Family*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of September, 2011, I electronically filed a true and correct copy of the foregoing **DEFENDANT'S COMBINED REPLY RE: SECOND MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Giovanni M. Ruscitti, Esq.
Justin Colby Berg, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

>/s/ Vicki Johnson