IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-cv-01441-RBJ-CBS

JACK KESLING and MICHELLE KESLING,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

    Defendant.

---

ORDER on PENDING MOTIONS

---

This order resolves all motions pending on this date.

**Facts**

On July 17, 2007 Jack and Michelle Kesling purchased a home located in Douglas

County, Colorado from Stephen and Janet Dulaney.  On September 19, 2007 the Keslings

purchased a "Gold Star Special Deluxe Form" homeowner's insurance policy from American

Family.  They have renewed the policy annually since that time.

Construction Defect Litigation

In June 2008 the Keslings began to discover problems with the main deck of their home.

After an initial exchange of emails, Mr. Kesling sent a detailed summary of the problems to the

Dulaneys on August 20, 2008 in which he described "massive cracking, lifting and leaking issues

on the west deck" and "water running through the exterior foundations walls into the home."

[CM/ECF docket #37-1] at 3.  The Keslings hired an engineering firm, BornEngineering, which

1

issued a report on the deck and related problems on October 31, 2008.  [#36-3].

BornEngineering issued a second report, generally focused on other problems with the house, on

June 18, 2009.  [#36-4].

On July 16, 2009 the Keslings filed a complaint in the Douglas County District Court

against defendants the Dulaneys and their company JLM Products & Design, Inc., which had

acted as the general contractor for the construction on the home and certain warranty repair

work; and the architect who designed the home; and various subcontractors involved in the

construction or warranty repair work.  [#1-2].  The Keslings alleged that they had discovered six

"conditions, defects and/or damage" in the home: (1) Damage to the surface of the main deck;

(2) damage to nearly all structural members of the main deck; (3) damage to interior and exterior

walls adjacent to the main deck; (4) damage to the roof system and adjacent members; (5)

moisture intrusion and elevated levels of mold in the downstairs bedroom; and (6) moisture

intrusion, elevated levels of mold, and rust, corrosion, and cracking of structural members and

walls in the crawlspace.

The Keslings alleged that the damage in categories (1) and (2) were "caused either

directly or indirectly by one or more" of five causes:

(i)     a defectively designed and/or constructed deck system . . . that results in
        the failure to provide positive drainage of precipitation off the surface of
        the deck and away from the Residence and instead diverts water toward
        the Residence and/or fails to prevent precipitation from penetrating the
        surface of the deck, the deck and vertical wall junctions, and the structural
        deck support columns;

(ii)    an improper application of weatherproofing materials and an epoxy/pebble
        stone coating . . . that is not appropriate for the subject deck system and
        results in the failure to provide positive drainage of precipitation off the
        surface of the deck and away from the Residence and instead diverts water
        toward the Residence and/or fails to prevent precipitation from penetrating
        the surface of the deck, the deck and vertical wall junctions , and the
        structural deck support columns;

(iii)    precipitation 'ponding' on the surface of the main deck that penetrates the surface of the deck, the deck and vertical wall junctions, and the structural deck support columns;

(iv)    the lack of proper flashing, lapping of weatherproofing materials, sealants, and control joints at various transition points; and/or

(v)    continuous and/or repeated exposure to substantially the same general harmful conditions.

[#1-2] at 4-5.

They alleged that the damage in category (3) and the moisture intrusion in category (5) were "caused directly or indirectly by one or more of" the same five causes attributed to categories (1) and (2) and/or "the lack of a vapor barrier in the crawlspace." *Id.* at 5-6.

The damage in category (4) was alleged to have been "caused either directly or indirectly by one or more" of three causes:

(i)    a defectively designed and/or constructed roof system that results in the failure to provide positive drainage of precipitation off the surface of the roof and away from the Residence , fails to prevent precipitation from penetrating the roof and roof and vertical wall junctions, and/or fails to adequately support the code applied loads;

(ii)    the lack of proper flashing, lapping of weatherproofing materials, sealants, and control joints at various transition points; and/or

(iii)    continuous and/or repeated exposure to substantially the same general harmful conditions.

The moisture intrusion, mold, etc. in category (6) was alleged to have been "caused either directly or indirectly by one or more" of five causes:

(i)    a defectively designed and/or constructed weatherproofing and drainage system in the crawlspace that results in the failure to provide positive drainage of precipitation off the surface of the deck and away from the Residence and instead diverts water toward the Residence and/or fails to prevent precipitation from penetrating into the crawlspace;

(ii)     an improper application of weatherproofing materials and a drainage
         system that is not appropriate for the subject crawl space and results in the
         failure to provide positive drainage of precipitation and water away from
         the Residence and instead diverts water toward the Residence and/or the
         failure to prevent precipitation and water from penetrating into and
         building up in the crawlspace;

(iii)    the lack of appropriate anchoring between load bearing walls, steel beams,
         steel columns, and concrete piers;

(iv)     the lack of a vapor barrier in the crawlspace; and/or

(v)      continuous and/or repeated exposure to substantially the same general
         harmful conditions.

The Court has not been informed about the status of the state court construction defect

litigation.

Insurance Coverage Litigation

As will be discussed in more detail below, Mr. Kesling first notified an American Family

agent of water damage to the deck and siding by telephone on August 6, 2008.  The Keslings

next contacted American Family by letter, through counsel, on August 28, 2009.  [#1-2] at 1.

The letter attached a copy of the state court complaint, bids they had obtained for repair work,

and an appraisal report.  The Keslings requested coverage for the "conditions, defects and

damages" at their home under their homeowner's policy which covers accidental direct physical

loss to property described in the policy unless the loss is excluded.  [#1-1] at 12.

On September 21, 2009 American Family denied coverage.  [#1-4].  The denial letter

recited that American Family had inspected the residence and had reviewed the information

provided.  Apparently the Keslings had provided at least one of the engineer's reports, because

the denial letter indicates that American Family's investigation confirmed what was listed in "the

BornEngineering report."  It attributed the damage to "water intrusion due to wear and tear,

4

deterioration, and faulty workmanship, materials, repairs and construction" and concluded that

this type of damage was excluded.  The letter cited the following terms of the policy:

First, the "Losses Not Covered" subsection of the "Perils Insured Against-Section I"

includes the following paragraph:

> 6.  Other Causes of Loss:
>
> a.  wear and tear, marring, scratching, deterioration;
> b.  inherent vice, latent or inherent defect, mechanical breakdown;
> c.  smog, rust, corrosion, condensation, mold, wet or dry rot;
> d.  smoke from agricultural smudging or industrial operations;
> e.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, wells, floors, roofs or ceilings;
> f.  birds, vermin, rodents, insects or domestic animals.

I note, although the letter did not, that this exclusion contains an exception to the

exclusion, providing "[h]owever, we do cover any resulting loss to property described in

Coverage A – Dwelling and Dwelling Extension from items 2 through 8 above, not excluded or

excepted in this policy."  [#1-1] at 12.

Second, the policy contains the following exclusions in the "Exclusions-Section I" part of

the policy:

> The following exclusions apply to Coverage A – Dwelling and Dwelling
> Extension.  We do not insure for loss caused by any of the following:
> . . .
> > 2.  Planning, Construction or maintenance, meaning faulty, inadequate or
> > defective:
> >     a. construction, reconstruction, repair, remodeling or renovation;
> >     b. materials used in construction, reconstruction, repair, remodeling or
> >     renovation;
> >     c. design, workmanship or specifications;
> >     d. siting, surveying, zoning, planning, development, grading or
> >     compaction; or
> >     e. maintenance
> > of part of all of the insured premises or any property.
>
> > 3.  Weather conditions which contribute in any way with a cause or event
> > excluded in Part A above to produce the loss.

5

Again I note that these exclusions are subject to an exception for "any resulting loss to property described in Coverage A – Dwelling and Dwelling Extension not excluded or excepted by this policy." [#1-1] at 14.

On September 30, 2009 plaintiffs responded to the denial letter, disagreeing that any of the "32 enumerated causes" found in the "Losses Not Covered" exclusion applied to their claim but, alternatively, arguing that the exception to the exclusion restored the coverage.  Similarly, they relied on the exception to the exclusions for defective construction and weather conditions. [#1-5] at 2-3.

On October 20, 2009 American Family again denied the claim.  In addition to the exclusions cited above, this letter cites a clause limiting "loss of use" damages to losses incurred within 12 months following the date of loss; a Colorado Amendatory Endorsement limiting coverage for damage caused by fungi (mold) to $5,000; another paragraph in the "Losses Not Covered" subsection of the "Perils Insured Against – Section I" that excluded "freezing, thawing, pressure or weight of water or ice, whether or not driven by wind, to: a. a fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock . . .(again without reference to the exception); and two addition parts of the "Exclusions – Section I" part of the policy:

> 3. Neglect of any insured to use all reasonable means to protect covered property at and after the time of loss . . .
>
> 9.  Water Damage, meaning
>
> a. flood, surface water, waves, tidal water or overflow of a body of water, from any cause.  We do not cover spray from any of these, whether or not driven by wind.
> b. water from any source which backs up through: sewers or drains, or water which enters into and overflows or accidentally discharges from with a sump pump, sump pump well, sump pump well discharge system or other type system

designed to remove subsurface water which is drained from the foundation area;
or
c. regardless of its source, water below the surface of the ground.  This includes
water which exerts pressure on or flows, seeps or leaks through any part of a
building or other structure, sidewalk, driveway or swimming pool.

We do cover direct loss that follows, caused by Fire or Explosion . . .

[#1-7].

On October 27, 2009 plaintiffs once again responded to and took issue with the denial of

their claim.  [#1-8].  American Family again denied the claim on November 19, 2009.  [#1-9].

On June 18, 2010 the Keslings filed the present lawsuit asserting three claims for relief: (1) a

declaration that American Family is entitled to coverage; (2) breach of contract; and (3)

insurance bad faith.  The case is set for a seven-day jury trial beginning on May 29, 2012.

**Conclusions**

Four motions are presently pending and are addressed in the order of their filing.

**[Plaintiffs'] Motion to Bifurcate and Consolidate All Issues Concerning the
Reasonableness and Necessity of Attorneys' Fees Into One Post-Verdict Hearing, or,
In the Alternative, Unopposed Motion for Extension of Time to Designate Experts
on Attorneys' Fees [#28]**

Plaintiffs state that they seek attorney's fees under the "wrong of another doctrine."  They

explain in a footnote that American Family's bad faith denial of their claim caused them to have

to incur expenses in the state court construction defect case.  They ask the Court to bifurcate all

issues concerning the reasonableness and necessity of attorney's fees into a post-verdict hearing

in order to achieve efficiency and to avoid prejudice from the jury's being distracted or confused.

Colorado does recognize a cause of action for attorney's fees and other litigation

expenses incurred when "the natural and probable consequence of a wrongful act has been to

involve plaintiff in litigation with others." *International State Bank of Trinidad v. Trinidad Bean
& Elevator Co.,* 245 O, 489 (Colo. 1926). *See Elijah v. Fender,* 674 P.2d 946, 951-52 (Colo.

1984). The fees are not barred by the American Rule which, unless there is a contractual or statutory exception, prevents the Keslings from recovering the attorney's fees they incur prosecuting their insurance claims against American Family. Rather, they are recovered as damages resulting from tortious conduct.

However, plaintiffs did not assert a claim based upon the "wrong of another" doctrine. In contrast, they did plead a "wrong of another" claim in the state court case. *See* their complaint and prayer for relief in that case, [#1-2] at ¶27 and Prayer for Relief ¶i. There is no such claim in their Complaint here, nor is it mentioned in the summary of their claims in the Scheduling Order. [#20]. To the best of my knowledge, this claim is first mentioned in the pending motion.

In order to establish a claim for attorney's fees and costs through a "wrong of another" claim, plaintiffs would have to convince the trier of fact, here a jury, by a preponderance of the evidence that American Family's denial of their claim did cause them to have to pursue and incur fees and costs in the construction defect case. They cannot pursue such a claim without pleading it. I am aware that plaintiffs stated in their proposed pretrial order that their damages include attorney's fees and costs incurred in the state court case under the "wrongs of another doctrine." [#51] at 2. The magistrate judge signed the proposed order in substantially the form as submitted. [#57]. I can only speculate that no one brought to the magistrate judge's attention that the Complaint did not state a claim for damages under the "wrong of another" theory. In any event, and whether or not a plausible claim could have been stated, it was not.

Accordingly, there is no "wrong of another" claim in this case, and motion #28 is DENIED AS MOOT.

**Defendant's Motion for Partial Summary Judgment on Breach of Contract Claims [#30]**

American Family argues that the breach of contract claim should be dismissed under condition 18 of the policy that requires that "[s]uit must be brought within one year after the loss or damage occurred." [#1-1] at 16. It points out that, as reflected on a "First Notice of Loss" form, Mr. Kesling called American Family agent Ella Washington on August 6, 2008. [#30-3]. The form states, "[w]ater damage to deck and siding," and "[u]nknown how water damage happened or how the water got into the home." American Family assigned an adjuster, Bob Tamminga, III, to investigate. Mr. Tamminga called the Keslings and left phone numbers on August 20 and 22, 2008, seeking to set up an appointment, but they did not respond. [#30-4] at 5. He then sent the Keslings a letter indicating that if he did not receive a response or an estimate by September 1, 2008 he would close the file. [#30-5]. American Family had no further contact from the Keslings until receiving counsel's August 28, 2009 notice of claim letter. [#30-7]. Because this lawsuit was not filed until June 18, 2010, more than one year after the initial contact, American Family argues that plaintiffs' contract claim should be barred as untimely.

Plaintiffs respond, first, with an affidavit from Mr. Kesling. [#36-1]. He states that he contacted American Family initially after noticing a "wrinkle" on the surface of the deck. *Id.* ¶4. He does not dispute the Keslings' lack of response to American Family's efforts to contact them. However, he states that he did not intend to abandon or forfeit any claim. *Id.* ¶5. He says that he was not aware of the cause or extent of the damage to the deck until he received the first BornEngineering report on October 31, 2008, and that he was he was not aware of the cause or extent of the damage to other portions of the residence until he received the second BornEngineering report on or about June 18, 2009. *Id.* ¶¶6, 7.

Plaintiffs also argue that the one-year limitations period in the policy is contrary to Colorado law which has a three-year statute of limitations for breach of contract claims which begins to run when the cause of action accrues.  The accrual date, they argue, presents disputed issues of material fact.  Finally, plaintiffs argue that a single accrual date is inappropriate when dealing with ongoing or progressive property damage.

The Court is not impressed with Mr. Kesling's minimization of the damage reported on August 6, 2008 as only a "wrinkle."  As indicated above, in his letter to Mr. Dulaney dated August 20, 2008 he stated that in June 2008 the Keslings "were experiencing massive cracking, lifting and leaking issues on the west deck." [#37-1] at 3.  He also indicated in that letter that rainfall starting August 14, 2008 had forced him to take immediate corrective action, "as the deck has continued to peal (sic) and leak and we are now experiencing water running through the exterior foundation walls into the home." *Ibid.*  I note also that American Family's report of the August 6, 2008 telephone conversation does not mention a "wrinkle."  Rather, it indicates that Mr. Kesling reported water damage to the deck and siding, which would be consistent with his correspondence with Mr. Dulaney.  I wonder, frankly, who drafted the Kesling affidavit and why he signed it in this form.

If the Court nevertheless gives Mr. Kesling the benefit of the doubt, he told Ms. Washington during the August 6, 2008 phone call that it was unknown how the water damage happened or how water got into the house.  Even so, by October 31, 2008 when Mr. Kesling received the first BornEngineering report, the Keslings were at least aware of everything contained in that report.

Nor do I agree that the one-year limitation in American Family's policy is contrary to Colorado law.  A similar limitation in a State Farm policy was expressly upheld by a division of

the Colorado Court of Appeals which rejected essentially the same arguments that plaintiffs make here. *Grant Family Farms, Inc. v. Colorado Farm Bureau Mutual Insurance Company,* 155 P.3d 537, 538-39 (Colo. App. 2006).

The Court concludes that plaintiffs' contract claim is barred by the contractual period of limitations with respect to any damage concerning the deck, water intrusion resulting from defects in the construction of the deck, and all other matters addressed in the first BornEngineering report. However, the Court does agree with the plaintiffs that the contract claim is not barred by the contractual period of limitations to the extent that it concerns "property damage that is entirely unrelated to and independent of" problems with the deck. *See* Response [#36] at 12. Plaintiffs suggest that damage to the roof is an example of such damage. Whether damage to the roof or any other claimed damage is entirely unrelated to and independent of problems with the deck, and entirely unrelated to and independent of the problems identified in the First BornEngineering report, is an issue of fact. American Family has not demonstrated that there is no genuine dispute as to that fact issue.

I note as well that this motion does not seek dismissal of the bad faith claim under the contractual period of limitation. That is consistent with Colorado law. *Emenyonu v. State Farm Fire and Cas. Co.,* 885 P.2d 320, 322-23 (Colo. App. 1994).

Accordingly, motion #30 is GRANTED IN PART AND DENIED IN PART. It is denied with respect to plaintiffs' First Claim, which only asks that the Court interpret terms of the insurance contract as a matter of law. The Court has done so with respect to the contractual limitations provision and will do so as to other disputed provisions. The motion is granted in part as to the Second Claim. The claim of breach of the insurance contract is dismissed with respect to any damage concerning the deck, water intrusion resulting from defects in the

construction of the deck, and all other matters addressed in the first BornEngineering report.  The

motion to dismiss the Second Claim as barred by the contractual period of limitations is denied

with respect to damages entirely unrelated to and independent of the problems with the deck and

matters addressed in the first BornEngineering report.

**Defendant's Second Motion for Summary Judgment [#42]**

Defendants argue that plaintiffs cannot prove that (1) they have incurred "resulting loss"

within the policy's coverage, (2) that their claimed losses occurred within the policy period, or

(3) that American Family acted in bad faith.  The Court finds that the second and third issues

turn on issues of fact that are genuinely disputed and, therefore, that they are not grounds on

which the Court could grant a summary judgment.

With respect to the first issue, American Family implicitly concedes, or at least does not

here dispute, that the damages claimed fall within the policy's coverage if they are not expressly

excluded.  American Family asserts that the damages claimed fall within the policy's exclusion

of loss caused by faulty, inadequate or defective construction or design.  I agree.  It is evident on

the face of the damage claimed by the plaintiff, both in the state court case and here, that the

defective construction exclusion applies to all such damages.

The question, then, is what, if anything, is removed from the exclusion by the exception

to the exclusion.  Certainly the costs to repair or replace the deck (which is in any event

foreclosed by the contractual period of limitations), the roof, and the crawlspace are not restored

to coverage by the exception.  These are the parts of the home that are alleged to have been

improperly designed or constructed.  If those costs were restored, the exception would swallow

the exclusion.  Plaintiffs do not appear to disagree.  *See* Response [#44] at 1.

American Family suggests that, because there are no Colorado appellate cases that interpret the exception, "[w]e must thus look to case law from other jurisdictions for persuasive authority as to what qualifies as 'resulting loss' as an exception to the defective construction exclusion." Motion [#42] at 5. I do not entirely agree. Although case law certainly should be considered, the starting point in construction of the exception must be the wording of the exception itself.

Here, the exception is broadly worded: "However, we do cover *any resulting loss* to property described in Coverage A – Dwelling and Dwelling Extension not excluded or excepted in this policy." (emphasis added). "Any resulting loss" rationally could be interpreted to mean just that – any loss, other than the repair or replacement of the defective construction, that results from that defective construction. Thus, if the defective construction permitted water to penetrate into the home and cause damage other than to the defective parts, it rationally could be covered under this exception unless such damage were elsewhere excluded or excepted.

Another rational interpretation is illustrated by the case primarily relied upon by American Family, *Sapiro v. Encompass, Inc.,* 221 F.R.D. 513 (N.D. Cal. 2004). There, negligent construction of an addition to the home, specifically a gap between the flashing and the stucco coating the exterior walls, permitted moisture to infiltrate the gap undetected for a period of 22 years causing extensive damage to the home. A Safeco homeowner's policy had an exclusion for defective construction similar to that of the **A**merican Family policy here. The homeowner argued that damage caused by moisture infiltration, including fungi and even the cost of reconstructing the house, fell within exclusion's exception for "any ensuing loss not excluded or excepted." The court disagreed, concluding that the exception did not render the exclusion ambiguous; that, under California law, "ensuing loss" must be "separate" and "independent"

13

from the original peril; and that the losses claimed were directly attributable to the initial

negligent contracting.  *Id.* at 522.  The court added that, in any event, the damages claimed were

excluded by other portions of Safeco's policy.  *Ibid.*

American Family cites other cases that tend to support this interpretation.  *See Weeks v.
Co-Operative Ins. Co,* 817 A.2d 292, 296-97 (N.H. 2003); *Hanover New England Ins. Co. v.
Smith,* 621 N.E. 2d 382, 383 (Mass. App. 1993).  *See also Vermont Electric Power Co., Inc. v.
Hartford Steam Boiler Inspection and Ins. Co.,* 72 F. Supp. 2d 441, 445 (D. Vermont 1999).  I do

not dispute that these cases are authority for the interpretation urged by American Family.

Although the pending motion does not offer an example of something that would be covered

under this interpretation, I can imagine at least one: water infiltrating because of faulty

construction shorts an electrical circuit which in turn cases a fire.  The fire damage, unless

otherwise excluded or excepted, presumably would be covered.

Plaintiffs counter with *RK Mechanical, Inc. v. Travelers Property Cas. Co.,* 2011 WL

3294921 (D. Colo. August 1, 2011).  Two flanges inserted in the plumbing of a building in

construction cracked, causing water to overflow either from a burst pipe or directly from the

flange.  The subject insurance policy covered accidental property damage but excluded loss

caused by defective materials, workmanship or maintenance.  The exclusion was subject to an

exception: "if 'loss' by a Covered Cause of Loss results, we will pay for the resulting 'loss.'"

Travelers paid for the water damage but declined to cover the cost of replacing the flanges or the

cost of removing and replacing other identical flanges that showed signs of potential failure.  The

court rejected the policyholder's argument that the "ensuing loss provision" was broad enough to

cover removal and replacement of the defective flanges, commenting that "[a]n ensuing loss

provision does not cover loss caused by the excluded peril; it covers loss caused to the property

wholly separate from the defective property itself, in this case the escaping water, not the cracked flange." *Id.* at *7.

The quoted language lends some support to the plaintiffs' position, although the force of the case as applied to the present facts is limited by, among other things, the fact that the insurer did not contest coverage for the water damage. Plaintiffs cite a number of cases from other jurisdictions that also lend support to their position. *See, e.g., Alton Ochsner Medical Foundation v. Allendale Ins. Co.,* 219 F. 3d 501, 507 (5th Cir. 2000); *Sprague v. Safeco Ins. Co.,* 241 P.3d 1276, 1279 (Wash. App. 2010).

While the cases are of interest, I must take the language of this policy as it is and apply it to the facts of this case as they are. I do so while recognizing certain general principles of Colorado insurance coverage law. Ambiguous terms in an insurance policy are generally construed against the insurer. *Thompson v. Maryland Cas. Co.,* 84 P.2d 496, 501-02 (Colo. 2004). Exclusions generally are strictly construed against the insurer. *See, e.g., J&S Enterprises, Inc. v. Continental Cas. Co.,* 825 P.2d 1020, 1023 (Colo. App. 1991). The burden of establishing the applicability of an exclusion falls on the insurer, but once met, the burden shifts to the policyholder to establish an exception to an exclusion. *Rodriguez v. Safeco Ins. Co. of America,* 821 P.2d 849, 853 (Colo. App. 1991).

The defective construction exclusion is not ambiguous. American Family has indisputably established its applicability to all of the categories of damage that plaintiffs claim. However, the Court concludes that the exception to the exclusion is ambiguous, because it is reasonably susceptible to at least two meanings.[1] As discussed above, it can rationally be interpreted to mean precisely what the words say: "any resulting damage" could include damage

---

[1] Plaintiffs note that American Family's Rule 30(b)(6) deponent acknowledged that the term "resulting loss" is susceptible to multiple interpretations. Response at 17, citing testimony of Robert E. Tamminga, Jr. [#44-3] at 31. This does not of course mean that Mr. Tamminga necessarily agrees with the Court's construction.

15

to parts of the home other than the defective construction resulting from water or moisture

infiltration resulting from the defective construction.  Or, "any resulting damage" can rationally

be limited to damage that is "separate and independent" from that which is directly caused by the

defective construction.  The Court construes this ambiguous language against the insurer.

That is not the end of the story.  The "any resulting damage" exception is itself subject to

the proviso that no other exclusion or exception applies.  American Family has, in its denial

letters, asserted a number of other exclusions, some of which are subject to their own "resulting

damage" exceptions and some are not.  These other exclusions have not been discussed in the

parties' briefs on the pending motion, and therefore, the Court does not now reach or decide their

possible application.  The Court holds only that damage to parts of the house other than the deck,

the roof and the crawlspace resulting from water or moisture infiltration caused by defective

construction in those structures is "any resulting damage" within the meaning of the exception to

the defective construction exclusion.  Because it has not been shown that there is no genuine

dispute of material fact concerning the existence of such damages or whether any such damage

falls within another exclusion or exception in the policy, motion #42 is DENIED.

**Plaintiffs' Cross Motion for Partial Summary Judgment [#45]**

This motion simply asks the Court to adopt the construction of the "any resulting loss"

exception in the manner that the Court has now construed the term in ruling on American

Family's second motion for summary judgment.  Therefore, this motion is DENIED AS MOOT.

**Order**

1.  Motion #28 is DENIED AS MOOT

2.  Motion #30 is GRANTED IN PART AND DENIED IN PART.

3.  Motion #42 is DENIED.

4.   Motion #45 is DENIED AS MOOT.

DATED this 22nd day of March, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

17