UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01441-RBJ-CBS

JACK KESLING and
MICHELLE KESLING,

Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
a Wisconsin corporation,

Defendant.
_____

**DEFENDANT AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S
SUPPLEMENTAL BRIEF CONCERNING NONCOVERED CLAIMS**
_____

Defendant American Family Mutual Insurance Company, through this Supplemental Brief, requests the Court to determine as a matter of law that none of Plaintiffs' recently itemized "resulting loss" damages are covered under the Plaintiffs' American Family homeowners policy, and that American Family accordingly entitled to entry of judgment in its favor on all claims asserted.

## INTRODUCTION

During the April 12, 2012 Pretrial Conference, the Court and counsel discussed remaining claims and damages. During this discussion, Plaintiffs' counsel agreed to provide an itemization of those damage claims which Plaintiffs contend to have survived the Court's March 22, 2012 Rulings on Pending Motions. The Court also granted Defendant permission to file supplemental briefing should American Family consider Plaintiffs' contemplated itemization to include damages that do not meet the criteria for coverage set forth in the March 22, 2012 Order.

On May 7, 2012 Plaintiffs conveyed their promised itemization in the form of a supplemental report from their retained expert, Neil Mekelburg (Plaintiffs' counsel had electronically transmitted Mr. Mekelburg's report on April 25, 2012, but due to some computer glitch on the part of one counsel's office or the other, it was not received until resent on May 7). This report is attached as Exhibit A to this Motion. Upon review of Mr. Mekelburg's report, American Family submits that none of Plaintiffs' claimed damages itemized therein meet the requisite criteria for coverage, and that Defendant is accordingly entitled to entry of judgment in its favor on all claims asserted as a matter of law.

## ARGUMENT

**CONTRACT CLAIMS**

Plaintiffs had previously set forth their claimed repair damages through two BornEngineering reports, the first dated October 31, 2008, which addressed moisture damage to the exterior deck, and the second dated June 18, 2009, which addressed additional construction defect concerns. In its March 22, 2012 Order, the Court ruled that Plaintiffs could not recover under their American Family homeowners policy for damages relating to their deck as addressed in the first BornEngineering report, nor could they recover for the cost to repair or replace defective construction as identified in either of the two reports. The Court thereby limited potential recovery under the Policy to "resulting loss" damages caused be defective construction of other aspects of the home, that is entirely unrelated to and independent of problems with the deck. In presenting this supplemental Motion for Summary Judgment, Defendant American Family analyzes Plaintiffs' current itemization of damage utilizing these criteria set forth in the Court's ruling.

After Mr. Mekelburg prepared his June 18, 2009 report (Exhibit B hereto) which documented recommended repair of 17 distinct areas of perceived defective construction, Plaintiffs thereafter retained Blu SKY Restoration Contractors to prepare an estimate of the cost to conduct those repairs addressed in Mr. Mekelburg's second report. It is this August 9, 2009 estimate from Blu SKY, attached hereto as Exhibit C, which Mr. Mekelburg relied upon in delineating between cost to repair defective construction and cost to repair resulting loss. American Family will accordingly use this Blu SKY repair estimate as the benchmark in addressing whether Plaintiffs' current itemization of damages does indeed indentify covered "resulting loss" as defined by the Court's ruling, and if so, in what amount.

The following will address, listed in order of magnitude, each of the areas of claimed "resulting loss" discussed in Mr. Mekelburg's April 25, 2012 report. Because American Family, for the purposes of this Motion, does not challenge the presence of these alleged defective conditions, nor the necessity of Mr. Mekelburg's recommended scope of repair, the ultimate issue of whether the proposed repair encompasses "resulting loss" presents a legal issue for the Court's determination.

**A. 15 Gable End Roof Overhang**

In the June 18, 2009 report, Mr. Mekelburg identifies that the framing for the south overhang of the upper roof was not constructed as detailed on the construction documents, such that the current framing cannot adequately support the code applied loads. As a result, the mid-point of the overhang was observed to be dropped from the level elevation of the main roof surface by approximately 4 inches. Mr. Mekelburg proposed that the gable end roof overhangs be rebuilt with proper framing.

The April 25, 2012 itemization assigns a total cost to repair the gable end roof overhang of $103,716.99, of which total the itemization attributes $75,027.59 to "resulting loss repair cost." The itemization provides no explanation or justification for assigning any portion of this repair to resulting loss. The suggested repair – removal of the gable end roof overhang and associated framing so that this section of the roof may be properly reframed – is a cost to repair or replace alleged defective construction, pure and simple. This perceived defect has nothing to do with moisture infiltration, which has been and remains the only "resulting loss" claimed by Plaintiffs in prior briefing before the Court. The fact that the framing is inadequate to support the loads of the gable end roof overhang has caused no other consequential damage to the home itself, apart from the cost to remove that section of roof in order to repair the supporting framing. Mr. Mekelburg acknowledged as much in his deposition testimony:

> Q: Mr. Mekelburg, let's turn to roofing. In your June 2009 report, beginning with, I think, A11 and extending through A15, you make a series of roofing repair recommendations, do you not?
>
> A: We do.
>
> Q: And when we look at the Blu SKY proposal, Exhibit 20, are those – are the costs of those recommended repairs reflected in the roofing line item of $70,459?
>
> A: I believe so, yes.
>
> Q: And then when I look at your cost allocation, you assign most of that as repair to defective work, specifically $52,087 of it, but you also assign a remaining $18,372 as repair to resulting loss or damage.
>
> Again, please explain how you arrived at the allocation between the two numbers.
>
> A: Alright. Let me look through my report really quick.
>
> Q: Oh, sure.

> A: Okay. The majority of the roofing identified in the allocation report on Exhibit 19 is for the defective work at the eaves, the flashing, the ridge vent, and to the rake edges. The remainder of that roofing number, the $18,000 plus, is the roofing required to be removed and replaced in order to fix the gable end roof overhangs.

Mekelburg depo. at pp. 51-52 (Exhibit D hereto). Mr. Mekelburg has simply calculated the cost to replace that section of the roof which was defectively constructed, a type of repair the Court has already ruled falls outside of policy coverage.

American Family would note that the repair costs set forth in the April 25, 2012 report bear no relation to those set forth in the Blu SKY August 9, 2009 report, in which the listed cost to repair the gable end overhang is only $8,158.50. Even if we take into account Mr. Mekelburg's aforementioned deposition testimony that such repair entails removal and replacement of $18,000 in roofing materials – which does not qualify as "resulting loss" in the first instance – we still fall far short of Mr. Mekelburg's newly expressed, and unexplained numbers. In any event, this discrepancy is a moot point, given that Mr. Mekelburg has not identified any moisture intrusion or other resulting loss of any sort to the home as a result of the inadequately supported gable end roof overhang.

As a final comment, American Family would further note that to the extent the gable end roof overhang was inadequately supported, this condition existed from the time of the original construction of the home, and therefore could not be considered property damage occurring during American Family's homeowners policy period, which policy only incepted after the Keslings had purchased the home from the Dulaneys. While this point would independently void any claim of coverage, it is also moot given Plaintiffs' failure to identify any resulting loss as a result of this defective construction.

**A. 16 Crawlspace**

During his June 2009 inspection, Mr. Mekelburg observed soil along the south foundation wall to be damp to the touch, and further noted that ends of the steel beams were not supported at the foundation wall. Mr. Mekelburg accordingly recommended a series of crawlspace repairs, to both prevent further migration of moisture, and to provide adequate support to the foundation wall. His recommended repairs included installation of a new, interior perimeter foundation drain system, installation of several new helical piers to secure the foundation, as well as improved anchoring of the steel columns and beams.

The April 25, 2012 itemization purports to assign a resulting loss repair cost of $23,016.93 out of the total recommended crawlspace repairs totaling $37,473.84. Once again, the itemization offers no explanation for why any portion of these crawlspace repairs should be attributed to resulting loss. In deposition, Mr. Mekelburg acknowledged the cost of installing the new drain system would be a non-covered cost to repair defective construction:

> Q: Okay. So now that we've explored this a bit, you do agree that the cost of installing the new drain system would fall in the category of repair to defective work?
>
> A: I do. Yes, I do.

Mekelburg depo. at pp. 25-26. Mr. Mekelburg provided the same answers with regard to other crawlspace repairs, including installation of the helical piers, installation of the new vapor retarder, as well as adding additional bracing to steel beams:

> Q: Okay. Next one: installation of two new helical piers?
>
> A: Correct.
>
> Q: Which column or which category would we place that work in?
>
> A: Repair to defective work.

> Q: How about the installation of new vapor retarder?
>
> A: Repairs to defective work.
>
> Q: Adding new steel stiffener plates and bracing on steel beams?
>
> A: Repairs to defective work.
>
> Q: And finally, anchor the bearing plates?
>
> A: Repairs to defective work.

Mekelburg depo. at p. 28.

As a matter of law, and in light of Mr. Mekelburg's sworn concessions in such regard, costs to install a new perimeter drain, helical piers, vapor retarder and to provide additional bracing to steel beams are not recoverable under American Family's homeowners policy.

### A. 1. Stucco at Roof Fascia Board

Mr. Mekelburg comments that moisture penetrating the stucco beneath roof fascias has resulted in some rust staining at the nail heads. He recommends the stucco be removed at the underside of the roof fascias in order to expose and remove rusting fasteners. However, Mr. Mekelburg goes on to further state that "replacement of the fasteners would not be necessary as their only apparent purpose was to hold the felt barrier material on prior to the application of stucco." He goes on to recommend that once the stucco is removed, that the fascias be clad with a pre-finished metal trip edge to alleviate any further water absorption at the fascia boards.

While Mr. Mekelburg goes on to assign a resulting loss repair cost of $6,343.09, his description of the reasons for the recommended repair belie any notion that this entails repair of "resulting loss." The only apparent resulting loss damage is rusty nail heads, yet Mr. Mekelburg acknowledges that the nails need to be removed anyway in order to accomplish the appropriate

repair of replacing absorptive stucco with non-absorptive metal drip edge flashing at fascia boards. Hence, the entirety of the recommended repair is to correct an aspect of defective construction, and not to repair or replace any consequential loss.

> **A. 14  Roofing Ridge**
> **A. 10  Roof to Wall Intersection, Northern Wing**

American Family will address these two repair items collectively, because Mr. Mekelburg describes them as being interrelated.

Under Section A.14, Mr. Mekelburg recommends the strip of roof underlayment beneath the ridge cap roof tiles be replaced with a ridge venting system, to provide proper roof venting. The Blu SKY August 9, 2009 repair estimate assigns a collective cost of $10,470 to this repair, as set forth in the following detail:

| | |
|---|---|
| Continuous Ridge Vent – Aluminum | $ 3,867 |
| Roofer – Cut Existing Ridge for Roof Vent | $   333 |
| R&R Tile Roofing – Concrete – "S" or flat per tile | $ 6,270 |
| Room  Totals: Ridge Vent | $10,470 |

These described repairs pertain to the cost of repairing the defective condition. The August 9, 2009 repair estimate does not reference any estimated cost to conduct any associated water damage repair.

Section A. 10, relating to roof-to-wall intersection at the northern wing, states that certain repairs were necessary in order to properly effect the roof framing repairs outlined in item A. 14. However, the itemization goes on to note that "the framing at the intersection corner was found to be dry," and that there were no repair recommendations for this area. Nevertheless, the

8

itemization assigns a resulting loss repair cost of $4,459.03. Needless to say, if no repair recommendations are made, then there can be no allocated "resulting loss" repair cost.

### A. 13 Roof Rake Edge

Mr. Mekelburg recommends that in order to protect the fascia stucco cladding from moisture intrusion, the roof underlayment at the rake edge of the roof should be rolled back and a 12 inch wide strip of self-adhesive roofing membrane installed in its place. The associated August 9, 2009 repair estimate addresses only the cost of removing the tile roofing and applying the ice and water shield, with no mention of any consequential water intrusion. Nor does the repair estimate identify any separate category of interior repairs occasioned by the need to apply roofing membrane at rake edge.

### A. 11 Roof to Wall Intersection, Northern Wing

Mr. Mekelburg recommends that pan flashing be extended past the edge of the eve flashing, and that an extension diverter end piece be installed to the end of the pan flashing. The itemization does not identify any associated interior water damage, nor does the August 9. 2009 Blu SKY repair estimate document any repair of interior finishes, either. Rather, the only cost is that to repair the defective conditions.

### A. 12 Downslope Eaves

Mr. Mekelburg recommends that the flashing and low section of roof underlayment be removed and replaced, to allow for eave flashing to be installed with the roof underlayment. The cost to perform this work constitutes repair of defective construction.

While Mr. Mekelburg does comment in this section that there are numerous areas where there is visible staining of the fascia stucco cladding indicating moisture intrusion, he has

9

elsewhere described that the entire stucco cladding to the home must be replaced anyway for unrelated reasons, due to the lack of control joints and weep screeds.

> Q: Okay. Now, you consider the stucco to have been defectively applied at the time the house was built, do you not?
>
> A: I do.
>
> Q: And we discussed each of the reasons why you consider the stucco to have been defectively applied?
>
> A: I believe so.
>
> Q: And you recommended replacing the entire stucco cladding to correct these construction deficiencies, have you not?
>
> A: We do.

Mekelburg depo. at p. 47. Hence, the limited repair cost of $4,327.91 assigned by Mr. Mekelburg to replace any flashing relates solely to the cost to repair defective construction, and not resulting loss.

### A. 4 Stucco Overhand at Garage Corner

Mr. Mekelburg recommends removing the bottom portion of stucco along the south elevation of the garage wall in order to provide a continuous metal angle flashing along the entire length of the overhanging stucco. Once again, the limited repair cost of $2,234.32 pertains to the cost to repair defective construction – absence of necessary flashing and weep screeds – without any additional cost to repair any associated water damage.

**TORT CLAIM FOR BAD FAITH CLAIMS HANDLING**

Through its August 8, 2011 Second Motion for Summary Judgment, American Family has raised the argument that a determination in an insurer's favor as to a lack of coverage is fatal to the bad faith claim as well. *See Rodriguez v. Safeco Ins. Co.*, 821 P.2d 849 (Colo. App. 1991).

This only stands to reason, since in the absence of coverage, the insurer's claims handling procedures cannot be considered to have caused any damage to the insured's interest. In its September 26, 2011 Reply Brief, American Family further cited to *Tozer v. Scott Wetzel Services, Inc.*, 883 P.2d 496, 499 (Colo. App. 1994) for the proposition that when an insurer presents a legal argument as a rationale for not paying benefits, the question of the reasonableness of such action is one for the court and not the jury. The Court did not address American Family's arguments in such regard in its Order on Pending Motions, perhaps because at that stage in the proceedings it remained unclear which, if any portion of Plaintiffs' contract damage claims might survive the rulings expressed in the Court's Order.

American Family respectfully submits, for the reasons expressed in its prior Summary Judgment briefing, that should the Court determine Plaintiffs are not entitled to recovery of any insurance benefits, then American Family would, by the same token, be entitled to judgment on Plaintiffs' bad faith claim. American Family further submits that since the Court has acknowledged in its March 22, 2011 Order the interpretation of the "resulting loss" provision is a matter of first impression in Colorado, and that case law from other jurisdictions supports American Family's interpretation of the provision, then American Family has demonstrated the reasonableness of its coverage decisions from a legal perspective under *Tozer v. Scott Wetzel Services, supra*, and is thereby entitled to judgment in its favor on the bad faith claims on that alternative ground as well.

**CONCLUSION**

Under the law of the case, the Keslings' contract claims at trial are limited to recovery of any "resulting loss" damages identified in Mr. Mekelburg's June 18, 2009 report. Review of that report, as well as Plaintiffs' more recent itemization of damages, reveals that the report only

indentifies repairs to defective construction, and is silent as to any consequential cost to repair water damaged finishes or other consequential damages.  American Family accordingly submits the Keslings cannot recover from American Family for any of their proposed repair expenses, and that American Family is thereby entitled to judgment in its favor on both contract and tort bad faith claims.

Respectfully submitted this 10th day of May 2012.

  s/ Colin C. Campbell
Colin C. Campbell, Reg. No. 12193
Clifton J. Latiolais, Reg. No. 13765
CAMPBELL, LATIOLAIS & AVERBACH, P.C.
825 Logan Street
Denver, CO 80203
Telephone:  (303)861-7760
Facsimile:  (303)861-7767
Email:  ccc@cla-law.net
Email:  cjl@cla-law.net
*Attorneys for Defendant American Family*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of May 2012, I electronically filed the foregoing **DEFENDANT AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S SUPPLEMENTAL BRIEF CONCERNING NONCOVERED CLAIMS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Giovanni M. Ruscitti, Esq.
Justin Colby Berg, Esq.
Berg Hill Greenleaf & Ruscitti, LLP
1712 Pearl Street
Boulder, CO 80302

*/s/ Stacey M. Curtin*
*[A duly signed original is on file at the law offices of Campbell, Latiolais & Ruebel, P.C.]*